**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

KINETIC CONCEPTS, INC.,               )
KCI LICENSING, INC., KCI USA,         )
INC., KCI MEDICAL RESOURCES,          )
MEDICAL HOLDINGS LIMITED, KCI         )
MANUFACTURING and WAKE FOREST         )
UNIVERSITY HEALTH SCIENCES,           )
                                      )
                  Plaintiffs,         )
                                      )
            v.                        )     NO. 1:08CV00918
                                      )
CONVATEC INC.,                        )
BOEHRINGER WOUND SYSTEMS, LLC,        )
and BOEHRINGER TECHNOLOGIES, LP,      )
                                      )
                  Defendants.         )

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter comes before the Court on several motions. The Court considers first the Amended Motion to Amend Scheduling Order (Opposed) (Docket Entry 75) filed by Kinetic Concepts, Inc., KCI Licensing, Inc., KCI USA, Inc., KCI Medical Resources, Medical Holdings Limited, KCI Manufacturing, and Wake Forest University Health Sciences (collectively, "Plaintiffs"). (Docket Entry 75.)[1] Said motion requests that this Court modify the Joint Stipulated Scheduling Order, including to allow more time for discovery. In addition, Defendant ConvaTec Inc. ("ConvaTec") has filed two Motions to Seal. ConvaTec's first Motion to Seal (Docket Entry 58) requests permission to file under seal six exhibits attached to its Memorandum in Support of its Motion to Compel (Docket Entry 57) and

_____

[1] Plaintiffs previously filed a Motion to Amend Scheduling Order (Opposed). (Docket Entry 70.) Because the subsequent amended motion subsumed the issues Plaintiffs raised in the earlier motion, the Court will treat the earlier motion as moot. (<u>Compare</u> Docket Entries 70 and 75.)

to redact portions of said memorandum referencing those exhibits. In its second Motion to Seal (Docket Entry 81), ConvaTec seeks leave to file under seal one exhibit to its Memorandum in Support of its Motion for Protective Order (Docket Entry 80) and to redact portions of said memorandum referencing that exhibit.

## I.  BACKGROUND

Plaintiffs have brought a claim against Defendants for patent infringement related to a wound treatment product. (Docket Entry 4 at ¶¶ 25-29.) On September 1, 2009, this Court, per United States Magistrate Judge Wallace W. Dixon, entered a Joint Stipulated Scheduling Order that set November 3, 2009, as the "deadline for leave to amend pleadings and to add parties," after which, "the court will grant leave for good cause." (Docket Entry 37 at 1.) It also provided: "Close of Fact Discovery: December 3, 2009" and "Expert discovery shall be completed on or before April 29, 2010." (Id. at 1-2.) The Joint Stipulated Scheduling Order required disclosure of expert reports during the time between the closing dates for fact and expert discovery. (Id. at 2.)

Shortly after entry of the Joint Stipulated Scheduling Order, the Clerk set this case for trial during the Court's October Master Calender Term (which begins on October 4, 2010). (Docket Entry 46.) Midway through the fact discovery period, ConvaTec filed a Motion to Seal (Docket Entry 58), in connection with a motion to compel and supporting brief. On the day fact discovery closed, Plaintiffs filed a Motion to Amend Scheduling Order (Opposed). (Docket Entry 70.) A week later, Plaintiffs replaced that motion

-2-

with an Amended Motion to Amend Scheduling Order (Opposed). (Docket Entry 75 at 3-4.) On January 7, 2010, ConvaTec filed a second Motion to Seal (Docket Entry 81), pertaining to a motion for protective order and supporting brief.

## II. DISCUSSION

This discussion first addresses Plaintiffs' Amended Motion to Amend Scheduling Order (Opposed) (Docket Entry 75), by considering whether good cause exists to extend various case management deadlines. The Court then evaluates ConvaTec's two Motions to Seal (Docket Entries 58, 81), including by assessing whether a right of public access attaches to the proposed sealed items.

### A. Plaintiffs' Amended Motion to Amend Scheduling Order

Plaintiffs ask the Court to amend the Joint Stipulated Scheduling Order as follows:

| Activity | Current Deadline | Proposed Deadline |
|----------|------------------|-------------------|
| Deadline for Seeking Leave to Amend Pleadings without Showing Good Cause | November 3, 2009 | April 26, 2010 |
| Deadline for Seeking Leave to Add Parties without Showing Good Cause | November 3, 2009 | January 25, 2010 |
| Close of Fact Discovery | December 3, 2009 | April 5, 2010 |
| Due Date for Expert Reports Required under Rule 26(a)(2)(A) for Any Issue on Which a Party Carries the Burden of Proof | March 1, 2010 | April 19, 2010 |
| Due Date for Expert Rebuttal Reports | March 29, 2010 | May 17, 2010 |
| Close of Expert Discovery | April 29, 2010 | June 21, 2010 |

(Docket Entry 75 at 3-4.)  For the reasons that follow, the Court determines that the Joint Stipulated Scheduling Order should be amended in part.  Specifically, the Court will extend the time for the parties to complete fact and expert discovery, as well as to disclose expert reports,[2] but will not alter the scheduling order provisions regarding amendment of pleadings or addition of parties.

### 1.  Standard for Amending a Scheduling Order

The Federal Rules of Civil Procedure ("the Rules") require the issuance of a scheduling order during the early phase of a case.  See Fed. R. Civ. P. 16(b)(2).  This requirement came into the Rules as part of "[t]he Supreme Court['s] extensive[] amend[ment] [of] [Rule] 16 in 1983."  Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987).  "The drafters of the Rules intended this [scheduling] order to control the subsequent course of action so as to improve the quality of justice rendered in the federal courts by sharpening the preparation and presentation of cases, tending to eliminate trial surprise, and improving, as well as facilitating, the settlement process."  Id. at 84-85 (internal quotation marks omitted).

"The scheduling order must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).  See also Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) (explaining that requiring these time limits "deals

---

[2] Because of the passage of time since the filing of this motion, some of the new deadlines will extend even further than initially proposed so that the extension will have meaningful effect.

with the problem of procrastination and delay by attorneys in a context in which scheduling is especially important – discovery"). Moreover, these time limitations are real; as one of the most highly-respected jurists to serve on this Court, Judge Eugene A. Gordon, observed more than two decades ago: "the scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." Forstmann, 114 F.R.D. at 85 (internal quotation marks omitted).[3] To the contrary, "a scheduling order is the critical path chosen by the [court] and the parties to fulfill the mandate of Rule 1 in securing the just, speedy, and inexpensive determination of every action." Marcum v. Zimmer, 163 F.R.D. 250, 253 (S.D.W. Va. 1995) (internal brackets and quotation marks omitted).

Accordingly, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). See also M.D.N.C. R. 26.1(d) (providing that motions seeking an extension of the discovery period "must set forth good cause justifying the additional time and will be granted or approved only upon a showing that the parties have diligently pursued discovery" (emphasis added)); Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." (emphasis added)). The "good cause"

---

[3] Forstmann has been recognized as a "well-reasoned" and influential decision. Marcum v. Zimmer, 163 F.R.D. 250, 254 n.6 (S.D.W. Va. 1995).

standard for securing an amendment of the time-limits in a scheduling order does not require a litigant to go so far as to show "manifest injustice" or "substantial hardship." See Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b). Instead, "the touchstone of 'good cause' under Rule 16(b) is diligence." Marcum, 163 F.R.D. at 255.

In other words, "'[g]ood cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." George v. Duke Energy Retirement Cash Balance Plan, 560 F. Supp. 2d 444, 480 (D.S.C. 2008). "'[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.'" Marcum, 163 F.R.D. at 254 (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (ellipses and emphasis omitted)). Accord 3 James Wm. Moore et al., Moore's Fed. Prac. - Civil § 16.14[b] (3d. 2009). Nor will showing a lack of prejudice to one's opponent establish good cause. See Cole v. Principi, No. 1:02CV790, 2004 WL 878259, at *7 (M.D.N.C. Apr. 22, 2004) (Beaty, J.) (unpublished)[4]; Dewitt v. Hutchins, 309 F. Supp. 2d 743, 748 (M.D.N.C. 2004) (Dixon, M.J.); Moore, supra, § 16.14[b].

2. Analysis of the Proposed Scheduling Order Amendment

Plaintiffs seek an extension of the deadlines for amending pleadings, adding parties, conducting fact and expert discovery, and serving expert reports. (Docket Entry 75 at ¶ 7.) Their motion claims that "Defendants do not oppose and in fact would welcome the

---

[4] Although the Westlaw version of this opinion bears a date of April 4, 2004, the Court's own records document the date of decision as April 22, 2004.

-6-

extensions Plaintiffs' Motion requests . . . ." (Id. at ¶ 4.)
However, in their response, "Defendants oppose any extensions that
would merely allow Plaintiffs to create further delays, including
the delay of a claim construction hearing." (Docket Entry 77 at 1.)

According to Plaintiffs, good cause for an extension of the
scheduling order deadlines exists, because "all parties require
additional time to complete fact and expert discovery." (Docket
Entry 75 at ¶ 4.) Plaintiffs do not provide detailed information
about the discovery that remains outstanding or why necessary
discovery was not (or could not be) completed during the allotted
time, but they do assert that the parties "have been producing
thousands of documents." (Id.) Defendants contend that Plaintiffs
bear responsibility for delays during discovery. (Docket Entry 77
at 2.) However, Defendants do not dispute that the parties have
exchanged a substantial volume of documentary material.

Moreover, Defendants' opposition to an extension of discovery
deadlines appears largely tactical: "Defendants do not oppose
Plaintiffs' motion to amend the Scheduling Order, if Plaintiffs
agree to request that the Court hold a prompt claim construction
hearing." (Docket Entry 77 at 1.)[5] Defendants further state that

_____

[5] The parties have focused on the claim construction (or "Markman") issue
from the inception of the case, including by devoting an entire section of the
Joint Stipulated Scheduling Order to deadlines related to that matter. (Docket
Entry 37 at 2.) That portion of the scheduling order required the parties to
prepare briefs on claim construction during the same, relatively short window
allotted to fact discovery. (Id. at 1-2.) The record reflects that the parties
jointly sought and obtained permission to file briefs related to the claim
construction issue in excess of normal page limitations and that they attached
voluminous materials to those briefs and related supporting declarations.
(continued...)

-7-

said hearing would "guide all future fact and expert discovery." (Id.) These statements tend to confirm Plaintiffs' assertion that both sides acknowledge the existence of a need for additional discovery to properly prepare this case for trial.

Apart from Defendants' admitted interest in using opposition to any alteration of the current scheduling timeline as leverage to get Plaintiffs to agree to an early claim construction hearing, Defendants' resistance to the requested extensions seems to stem from a preference that the current trial date remain in place. (Docket Entry 77 at 2.) There is a strong tradition in this district of enforcing case management deadlines to ensure that trials take place as scheduled. See generally Walter Kidde Portable Equip., Inc. v. Universal Security Instruments, Inc., No. 1:03CV537, 2005 WL 6043267, at *3 (M.D.N.C. July 7, 2005) (unpublished) (noting that "court's scheduling practice has proven to be effective for the management of individual cases and for overall docket control and management" and citing "court's history of strict adherence to discovery schedules"). However, a properly

---

[5](...continued)
(Docket Entries 38-44, 49, 51-54.) The demanding nature of these undertakings is further confirmed by the fact that (even with nine different attorneys listed on the docket as representing them and an untold additional number of attorneys working for them behind the scenes), Defendants were unable to file their initial claim construction brief on time and instead, with Plaintiffs' consent, obtained permission to file it a day late. (Docket Entry 45.) The parties thereafter devoted additional time and attention to briefing Defendants' request for an expedited claim construction hearing. (Docket Entries 60, 61, 66, 67, 71.) The assigned district judge recently held a status conference with the parties regarding that motion (see Docket Entry dated Mar. 3, 2010) and has set another status conference for April 8, 2010 (Docket Entry 106). It does not appear that a date has yet been set for the claim construction hearing.

calibrated extension of existing discovery deadlines will not preclude this case from remaining on its current trial setting.[6]

Given these circumstances, the Court returns to the basic question of whether "there is some 'good cause' why the court should not adhere to the timetable specified in the scheduling order," Forstmann, 114 F.R.D. at 85, keeping in mind that "the touchstone of 'good cause' under Rule 16(b) is diligence" and that "carelessness is not compatible with a finding of diligence," Marcum, 163 F.R.D. at 254-55 (internal quotation marks omitted). In this regard, the Court does not find any basis for concluding that Plaintiffs have behaved in a careless fashion. Further, although Plaintiffs might well have pursued discovery more aggressively than they apparently did prior to the expiration of the original fact discovery period, the Court does not find that Plaintiffs failed to act with the level of diligence necessary to support an extension of discovery deadlines.

On the existing record, the Court is unable to say definitively whether either side bears greater responsibility for any unnecessary delays in the conduct of discovery in this case. However, even if the Court accepted Defendants' portrait of the relevant activities, the Court would not view that showing as "demonstrat[ing] lack of diligence or carelessness on Plaintiff[s'] part, hallmarks of failure to meet the good cause standard," West

---

[6] Although the October Master Calender Term begins on October 4, 2010, it lasts for an extended period and a number of cases generally are set for each term. As a result, the term's trial judges likely will have some flexibility to determine when (within the term) this case should come to trial.

Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc., 200 F.R.D. 564, 567 (S.D.W. Va. 2001). Instead, the Court finds that the most reasonable construction of the events of the fall of 2009 is as follows: the parties' self-selected three-month window for completion of fact discovery was unduly optimistic, particularly given the volume of documents to be exchanged and their simultaneous involvement in elaborate briefing and evidence marshaling on the claim construction issue. In such a context, the Court has no difficulty concluding that even diligent litigants might fail to complete fact discovery in the allotted time. Such delays as to fact discovery likely caused a cascading effect on the completion of expert discovery (which often cannot go forward in a productive way when fact discovery remains outstanding).

Furthermore, a review of other cases in which district courts in the Fourth Circuit have found a lack of good cause to extend discovery deadlines reveals that the movants' failures in those instances featured far more egregious malfeasance or nonfeasance than even Defendants attempt to attribute to Plaintiffs here. See, e.g., Mitchell v. Trend Setting Designs, Inc., No. 1:08CV554, 2009 WL 3643482 (W.D.N.C. Oct. 29, 2009) (unpublished) (noting that "plaintiff waited until discovery was nearly over before he propounded his *first* discovery requests" and gave no viable reason for untimely expert designation in "conclud[ing] that plaintiff has not diligently pursued discovery in this matter"); Smith v. United Steelworkers of America, Civil Action No. 2:04-0499, 2007 WL 2477345 (S.D.W. Va. Aug. 29, 2007) (unpublished) ("This case

-10-

presents a clear lack of diligence by the plaintiff. . . .
Plaintiff did not initiate any written discovery, did not take any
depositions of any [other] employees and did not explore the theory
of similarly-situated co-workers during the nearly 11 months of
discovery. . . . Further, plaintiff did not seasonably file a
motion to extend the deadline . . . .”); Marcum, 163 F.R.D. at 251-
52, 255 (declining to re-set discovery deadlines for fourth time
after plaintiff repeatedly failed to meet obligations).

In addition, the Court concludes that both sides need
additional discovery (a fact Defendants at least tacitly admitted
through their somewhat coy approach of conditioning opposition to
Plaintiffs’ instant request on Plaintiffs’ willingness to agree to
an expedited claim construction hearing). This consideration also
weighs in favor of a finding that good cause exists for an
extension of the discovery period; denying needed discovery likely
would make trial of the case more cumbersome due to the increased
likelihood of trial surprise. See Forstmann, 114 F.R.D. at 84-85
(noting that drafters of 1983 Amendment to Rule 16 intended
scheduling order requirement “to improve the quality of justice
rendered in the federal courts by sharpening the preparation and
presentation of cases, tending to eliminate trial surprise”).

In the end, this Court arrives at the same point as another
did recently: “Although it is by no means compelled on this
record, the court finds that, as a result of th[e] [litigants’]
respective misunderstandings, and [the evidence indicating that
Plaintiffs have made some efforts to carry out discovery], good

-11-

cause supports [a] scheduling order modification." City Nat'l Bank
v. Clark, Civil Action No. 2:05-0675, 2006 WL 2136666 (S.D.W. Va.
July 28, 2006) (unpublished).[7]  Accordingly, the Court amends the
Joint Stipulated Scheduling Order as follows:

| Activity | New Deadline |
|---|---|
| Close of Fact Discovery | May 7, 2010 |
| Due Date for Expert Reports Required under Rule 26(a)(2)(A) for Any Issue on Which a Party Carries the Burden of Proof | May 21, 2010 |
| Due Date for Expert Rebuttal Reports | June 4, 2010 |
| Close of Expert Discovery | June 18, 2010 |

The Court, however, declines to alter the Joint Stipulated
Scheduling Order's provisions regarding amendment of pleadings or
addition of parties for several reasons.  First, under the existing
scheduling order, the parties currently may seek leave to amend

_____

[7] In reaching this decision, the Court has considered the need to construe "good cause" in a fashion that balances competing concerns.  On the one hand, in this context, "good cause" must have sufficient content to deter litigants from treating a scheduling order as "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," Forstmann, 114 F.R.D. at 85.  On the other hand, adoption of an unnecessarily rigorous notion of "good cause" may have the undesirable effect of lengthening the discovery periods sought by litigants at the inception of a case.  See Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b) ("Since the scheduling order is entered early in the litigation, th[e] [good cause] standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test.  Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.").  Particularly where (as in this case) it appears that the parties initially may have opted for an unreasonably short fact discovery period given the volume of discovery material at issue and their other, simultaneous litigation obligations (i.e., claim construction briefing), the Court views the latter concern as particularly acute.  That said, the Court emphasizes that Plaintiffs "took a serious risk by waiting until the day [the fact discovery period ended] to file a motion for an extension of discovery deadlines with the court." Walter Kidde, 2005 WL 6043267, at *3.  Should Plaintiffs take another risk of that sort in this case, a different outcome might result.

-12-

pleadings or to add parties; they simply may not seek such leave without showing good cause. (See Docket Entry 37 at 1.) Second, the deadline set in the Joint Stipulated Scheduling Order for seeking leave to amend pleadings or to add parties more freely was not tied to the close of the fact discovery period and had passed before Plaintiffs filed the instant motion. Third, any amendment of pleadings or addition of parties likely would undermine the Court's ability to maintain the existing trial schedule. Under these circumstances, the Court sees no basis to alter the existing terms of the Joint Stipulated Scheduling Order related to amendment of pleadings or addition of parties.

Plaintiffs' Amended Motion to Amend Scheduling Order (Opposed) (Docket Entry 75) is thus granted in part and denied in part.[8]

---

[8] As noted earlier, the mandatory scheduling order and the related "good cause" requirement for scheduling modifications came into force in 1983. See Forstmann, 114 F.R.D. at 85. Prior to that time, courts had experimented with the use of scheduling orders. See Fed. R. Civ. P. 16 advisory committee's note, 1983 Amendment, Discussion, Subdivision (b). In Barwick v. Celotex Corp., 736 F.2d 946 (4th Cir. 1984), the Fourth Circuit confronted an appeal related to a scheduling order entered by a district court prior to the adoption of the 1983 Amendment to Rule 16. In affirming the district court's enforcement of the scheduling order in that case, the Fourth Circuit stated: "The requirements of the pretrial order are not set in stone, but may be relaxed for good cause, extraordinary circumstances, or in the interest of justice." Id. at 954 (emphasis added). The Fourth Circuit then added, "[h]owever, the terms of the order must be firmly and fairly enforced by the district judge if it is to serve the purpose of pretrial management . . . ." Id. The existing Rule 16(b) expressly limits modification of scheduling orders to "good cause" and thus does not appear to permit alteration of deadlines based upon a showing of "extraordinary circumstances" or "in the interest of justice," as Barwick did in connection with scheduling orders entered prior to the 1983 Amendment. It does not appear that the Fourth Circuit has repeated the relevant Barwick language in a published opinion construing a scheduling order adopted pursuant to the post-1983 Amendment version of Rule 16, but it has quoted that excerpt from Barwick in a few unpublished decisions, including, most recently, Wall v. Fruehauf Trailer Servs., Inc., 123 Fed. Appx. 572, 576 (4th Cir. 2005). A small number
(continued...)

-13-

B.  ConvaTec's Motions to Seal

ConvaTec has filed two unopposed motions to seal certain exhibits and portions of memoranda filed in connection with two discovery motions.  (Docket Entries 58, 81.)  The Court concludes that no public right of access attaches to the materials ConvaTec seeks to seal and thus that a showing of good cause would justify the requested relief.  Further, the Court finds that, whether analyzed under the good cause standard or the "competing interests" balancing test (which would govern if the common-law right of access applied to the materials in question), all but two of the exhibits at issue (and the related portions of the memoranda) merit protection from public disclosure.  As to the other two exhibits (and the portion of one memorandum discussing same), ConvaTec has failed to make the required showing under either potentially applicable standard.  As a result, ConvaTec's first Motion to Seal

---

[8](...continued)
of decisions from district courts in the Fourth Circuit also have employed this broader standard from Barwick since the 1983 Amendment, including a published 2008 opinion from the District of South Carolina, George, 560 F. Supp. 2d at 479. Because, in this context, "good cause" turns largely upon the movant's diligence, there may be cases where a litigant can show "extraordinary circumstances" or that an extension of a deadline is "in the interest of justice," but cannot establish "good cause."  For example, a litigant's counsel may have failed to pursue discovery in a diligent manner so that "good cause" would not exist, but denial of an extension might work such a hardship on the litigant's ability to obtain a resolution on the merits that a court reasonably could conclude that an extension nonetheless was "in the interest of justice."  Accordingly, in some cases, the Court might have to decide if the Barwick standard survived the 1983 Amendment to Rule 16.  The Court, however, finds no such need in this case. Plaintiffs have secured four scheduling modifications under the "good cause" standard and have not shown that "extraordinary circumstances" exist or that "the interest of justice" is such that the Court would have reason to extend the other two deadlines, if the Barwick standard did apply.

-14-

(Docket Entry 58) will be granted in part and denied in part and ConvaTec's second Motion to Seal (Docket Entry 81) will be granted.

### 1. Standard for Sealing Documents

Under the Federal Rules of Civil Procedure, "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. Such "[l]iberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34 (1984) (emphasis added).

"Because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." Id. Said provision states in relevant part that:

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> . . . .
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way; and
>
> (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

-15-

Fed. R. Civ. P. 26(c) (emphasis added). See also In re Grand Jury Subpoena, 836 F.2d 1468, 1477 (4th Cir. 1988) (noting that "issuance of protective orders in civil litigation has become almost routine" and "facilitat[es] resolution of private disputes").

However, the authority granted to a court under Rule 26(c) to require special handling of information gathered during discovery is constrained by the public's right of access to judicial records. See Level 3 Communications, LLC v. Limelight Networks, Inc., 611 F. Supp. 2d 572, 576 (E.D. Va. 2009) ("There is a highly-developed body of case law governing the handling of discovery documents and other materials filed with courts under seal in civil cases. For current purposes, this case law can be divided analytically into two categories. One body of case law relates to the protected status of documents produced in pre-trial discovery pursuant to a stipulated, court-approved protective order under Rule 26(c) of the Federal Rules of Civil Procedure. The second body of case law governs the public availability of materials that have been submitted to courts in connection with civil pleadings or motions (dispositive or otherwise) or entered by courts into evidence in the course of hearings or trial, whatever the materials' origins or pre-trial confidentiality status might previously have been.").

This constraint arises because "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," Landmark Communications, Inc. v. Virginia, 435 U.S. 829, 839 (1978). As a result, "the courts of this country recognize a

-16-

general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978).[9] "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." Virginia Dept. of State Police v. The Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted).[10]

Before considering whether a constitutional or only a common law right of access exists, however, a court must assess whether the materials at issue actually constitute "judicial documents and records," id. at 180. In this regard, the United States Court of Appeals for the Fourth Circuit (albeit in an unpublished opinion) has joined other courts in "hold[ing] that the mere filing of a document with a court does not render the document judicial." In re Policy Mgt. Sys. Corp., 67 F.3d 296, 1995 WL 541623, at *4 (4th Cir. Sept. 13, 1995) (unpublished) (citing United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995)). Accordingly, in any given case,

---

[9] The right of access to court records flows from the right of access to in-court proceedings; it applies in both civil and criminal cases. See Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 & n.4 (4th Cir. 1988).

[10] "The common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment." Rushford, 846 F.2d at 253.

some court-filed "documents fall within the common law presumption of access, while others are subject to the greater right of access provided by the First Amendment. Still others may not qualify as 'judicial records' at all." United States v. Moussaoui, 65 Fed. Appx. 881, 889 (4th Cir. 2003) (citing Amodeo, 44 F.3d at 145-46).

In light of this legal framework, "[w]hen presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements." Virginia Dept. of State Police, 386 F.3d at 576. Procedurally:

> [The district court] must give the public notice of the request to seal and a reasonable opportunity to challenge the request; it must consider less drastic alternatives to sealing; and if it decides to seal it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing. Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review.

Id. (internal citation omitted). "As to the substance, the district court first must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." Id. (internal citations and quotation marks omitted). See also Moussaoui, 65 Fed. Appx. at 889 ("We therefore must examine [materials submitted under seal] document by document to determine, for each document, the source of the right of access (if any such right exists). As to those documents subject to a right of access, we must then conduct the appropriate balancing to determine whether the

remainder of the document should remain sealed, in whole or in part." (internal citation omitted) (emphasis added)).

### 2. Analysis of the Sealing Requests

In its first Motion to Seal (Docket Entry 58), ConvaTec requests that this Court permit it to file under seal: 1) six exhibits to its Memorandum in Support of its Motion to Compel (Docket Entry 57 at Exs. 3-4, 8-10, and 29); and 2) portions of said memorandum that reference those exhibits (Docket Entry 57 at i, 1, 3-7, 11). The six exhibits consist of: 1) a business agreement (Ex. 3); 2) a financial report (Ex. 4); 3) excerpts from a deposition transcript related to another case, discussing a medical implement (Ex. 8); 4) a portion of a trial transcript related to another case, discussing an individual's financial information (Ex. 9); 5) a document discussing financial data (Ex. 10); and 6) handwritten notes showing mathematical computations and results of experiments (Ex. 29). In its second Motion to Seal (Docket Entry 81), ConvaTec seeks to seal: 1) a business agreement filed as an exhibit to its Memorandum in Support of its Motion for Protective Order (Docket Entry 80 at Ex. 3); and 2) redacted portions of said memorandum that reference that exhibit (Docket Entry 80 at i, 2, 6, 8).

As an initial matter, the Court notes that the instant motions to seal have been publicly docketed since their respective dates of filing on October 23, 2009, and January 7, 2010. Any interested party therefore has had sufficient time to seek intervention to contest any sealing order, but the docket reflects no such action.

-19-

Accordingly, the Court concludes that, as to each of the motions at issue, the "public notice" prerequisite to entry of a sealing order has been satisfied.  See Stone, 855 F.2d at 181 (discussing use of docketing to comply with procedural requirements for sealing).

Next, the Court must determine what, if any, public access right attaches to the items covered by the instant sealing requests.  See Virginia Dept. of State Police, 386 F.3d at 576; Moussaoui, 65 Fed. Appx. at 889; In re Policy Mgt. Sys. Corp., 1995 WL 541623, at *4.  A public access right of both common-law and constitutional dimension extends to attachments to summary judgment motions, "[b]ecause summary judgment adjudicates substantive rights and serves as a substitute for a trial . . . ."  Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 252 (4th Cir. 1988). However, given that Convatec seeks to seal documents related to discovery motions, not dispositive motions of the sort at issue in Rushford, it is not clear that any right of public access (common-law or First Amendment) applies to the instant sealing requests.

The Fourth Circuit has not resolved this question.  See Virginia Dept. of State Police, 386 F.3d at 576 ("[T]he district court simply assumed, without explanation, that the public has a First Amendment right of access to these documents [relating to discovery motions].  We are not at all convinced that this is a correct assumption . . .  We believe that further consideration and explanation by the district court is warranted.  . . . [R]egardless of its conclusion concerning the First Amendment, the district court should also consider whether there is a common law

-20-

right of access to these documents . . . ."). However, in an unpublished opinion, the Fourth Circuit has used language that suggests that no public right of access attaches in this context; specifically, in explaining its ruling reversing a district court's order unsealing documents filed (but not considered by that court) in connection with a motion to dismiss, the Fourth Circuit stated: "a document becomes a judicial document when a court uses it in determining litigants' <u>substantive</u> rights," <u>In re Policy Mgt. Sys. Corp.</u>, 1995 WL 541623, at *4 (emphasis added). Because discovery motions (of the sort to which the proposed sealed material pertains in this case) involve procedural, rather than "substantive" rights of the litigants, the reasoning of <u>In re Policy Management</u> supports the view that no public right of access applies here.[11]

---

[11] In addition, although he dissented from the view that documents filed with a motion to dismiss failed to qualify as "judicial records" for purposes of public access rights, Circuit Judge M. Blane Michael also employed reasoning suggesting that no such right would attach to discovery motion-related materials; specifically, he appeared to draw the access line between dispositive and non-dispositive motions. <u>See</u> <u>In re Policy Mgt. Sys. Corp.</u>, 1995 WL 541623, at *6 (Michael, J., dissenting) ("While I might agree that the presumption of openness does not automatically attach to every document filed with the court, <i>cf.</i> <i>Seattle Times v. Rhinehart</i>, 467 U.S. 20, 33 n.19 (1984), where, as here, the documents are filed in connection with a potentially dispositive motion, the presumption must attach."). A review of the <u>Seattle Times</u> footnote cited by Judge Michael further supports the conclusion that he would not treat materials filed along with discovery motions as "judicial documents" for purposes of public access. <u>See</u> <u>Seattle Times</u>, 467 U.S. at 33 n.19 ("Discovery rarely takes place in public. Depositions are scheduled at times and places most convenient to those involved. Interrogatories are answered in private. . . . Federal district courts may adopt local rules providing that the fruits of discovery are not to be filed except on order of the court. Thus, to the extent that courthouse records could serve as a source of public information [about discovery], access to that source customarily is subject to the control of the trial court." (internal citations omitted)). Other language from <u>Seattle Times</u> lends further weight to the notion that no right of public access attaches to materials filed with the court for purposes of resolving discovery disputes. <u>See</u> <u>id.</u> at 33 ("[P]retrial depositions
(continued...)

-21-

A judge of this Court has construed <u>In re Policy Management</u> as "highly persuasive" authority for the position that no public access right attaches to court-filed documents related to discovery disputes. <u>See</u> <u>United States v. Blowers</u>, No. 3:05CR93-V, 3:02CV93-V, 2005 WL 3830634, at *4 (W.D.N.C. Oct. 17, 2005) (Tilley, C.J.) (unpublished).[12]  In that case, Judge Tilley considered whether certain discovery materials that had been filed with the Court in connection with a discovery dispute in a criminal case constituted "judicial records" subject to a right of public access.  In answering that question in the negative, Judge Tilley stated that he found <u>In re Policy Management</u>'s "reasoning highly persuasive and very relevant to the issues presented [in <u>Blowers</u>]." <u>Id.</u> at *4. Following <u>In re Policy Management</u>, Judge Tilley declined to grant any public access right to the documents at issue because they had not been "used or relied upon by the district court in determining those defendants' <u>substantive</u> rights." <u>Id.</u> (emphasis added).

---

[11](...continued)
and interrogatories are not public components of a civil trial.  Such proceedings were not open to the public at common law and, in general, they are conducted in private as a matter of modern practice.  Much of the information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action.  Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." (internal citations and footnote omitted)).

[12] The <u>Blowers</u> decision cites said Fourth Circuit opinion as <u>In re Knight Ridder</u> (referencing the name of the intervenor in that case, rather than the plaintiff).  The style <u>In re Policy Management</u> was used herein because most district courts in the Fourth Circuit that have cited the case have done so. <u>See, e.g.</u>, <u>American Civil Liberties Union v. Holder</u>, 652 F. Supp. 2d 654, 660 (E.D. Va. 2009); <u>Ex parte Knight Ridder, Inc.</u>, 983 F. Supp. 1080, 1087 (D.S.C. 1997); <u>State of W. Va. v. Moore</u>, 902 F. Supp. 715, 717 (S.D.W. Va. 1995).

Moreover, at least four circuit courts expressly have held that "[t]he better rule is that material filed with discovery motions is not subject to the common-law right of access," Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1312 (11th Cir. 2001).  Accord Pintos v. Pacific Creditors Ass'n, 565 F.3d 1106, 1115 (9th Cir. 2009) ("'[G]ood cause' [as required under Rule 26(c)] is also the proper standard when a party seeks access to previously sealed discovery attached to a nondispositive motion."); Leucadia, Inc. v. Applied Extrusion Techs., Inc., 998 F.2d 157, 165 (3d Cir. 1993) ("[W]e hold there is a presumptive right to public access to all material filed in connection with nondiscovery pretrial motions . . ., but no such right as to discovery motions and their supporting documents."); Anderson v. Cryovac, Inc., 805 F.2d 1, 10 (1st Cir. 1986) ("Although we agree that the public has a right of access to some parts of the judicial process, we conclude that this right does not extend to documents submitted to a court in connection with discovery proceedings.").[13]

---

[13] Conversely, research has revealed no circuit-level decisions holding that a public access right applies to materials filed in connection with discovery motions.  The Court has taken note of several decisions from district courts within the Fourth Circuit that have subjected discovery motion-related filings to a common-law right of access, including Minter v. Wells Fargo Bank, N.A., 258 F.R.D. 118, 120-24 (D. Md. 2009), Silicon Knights, Inc. v. Epic Games, Inc., No. 5:07-CV-275-D, 2009 WL 577303, at *1-2 (E.D.N.C. Mar. 5, 2009) (unpublished), Covington v. Semones, No. 7:06CV614, 2007 WL 1170644, at *2-3 & n.2 (W.D. Va. Apr. 17, 2007) (unpublished), and Washington v. Buraker, No. 3:02-CV-106, 2005 U.S. Dist. LEXIS 44958, at *5-26 (W.D. Va. Mar. 29, 2005) (unpublished).  The Court does not find Minter persuasive for several reasons, including, most notably, its failure to address either the language in In re Policy Management or the reasoning underlying the rulings by the First, Third, Ninth and Eleventh Circuits.  Similarly, the Court opts not to follow Buraker because it fails to address the relevant circuit-level precedent, because it
(continued...)

-23-

In light of this authority, the Court concludes that no public access right attaches to the items at issue. That conclusion does not end the inquiry, however, because ConvaTec still must show "good cause" under Rule 26(c) to secure continued special handling procedures for these materials. See Chicago Tribune, 263 F.3d at 1313-15; Pintos, 565 F.3d at 1115-16; Leucadia, 998 F.2d at 165; Anderson, 805 F.2d at 14. Further, because the Fourth Circuit has not definitively resolved the access right question in the discovery motion context, the Court will conduct the "competing interests" balancing test that would govern if the common-law access right did apply, along with the "good cause" inquiry.[14]

Under Rule 26(c), a court may protect a party from "undue burden or expense," including by restricting access to materials that constitute "confidential research, development, or commercial information." Similarly, "[t]he common law presumption of access may be overcome if competing interests outweigh the interest in access," Stone, 855 F.2d at 180, such as where a need exists to

---

[13](...continued)
relies heavily on a Third Circuit decision dealing with settlement agreements (not discovery motions) that predates Leucadia, without addressing that later ruling by the Third Circuit directly on point, and because its analysis of In re Policy Management is unpersuasive (particularly in that it proposes to limit the meaning of In re Policy Management by taking one sentence from dicta in Rushford out-of-context). Finally, the Court concludes that Silicon Knights and Covington lack persuasive force because the former case follows the latter case without additional reasoning and the latter case follows Buraker without independent analysis.

[14] Some courts have treated the "good cause" analysis and the "competing interests" balancing test as identical when the document at issue was produced through protected discovery. See, e.g., Chicago Tribune, 263 F.3d at 1315. This Court does not choose to consider that question in this case, but instead simply observes that both inquiries involve similar considerations.

prevent court files from becoming "sources of business information that might harm a litigant's competitive standing," Nixon, 435 U.S. at 598. See also Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d at 303 (reversing order "unsealing the list of the inventory of the recovered treasure" awarded to litigant because "value of the inventory may be damaged by premature release of the inventory"); Woven Elec. Corp. v. Advance Group, Inc., 930 F.2d 913, 1991 WL 54118, at *6 (4th Cir. May 6, 1991) (unpublished) (ruling that record could be sealed to protect trade secrets).

Given the foregoing principles and based on a review of the record, the Court finds that Exhibits 3, 4, 10, and 29 to ConvaTec's Memorandum in Support of its Motion to Compel (Docket Entry 57) and the portions of said memorandum discussing those exhibits, as well as Exhibit 3 to ConvaTec's Memorandum in Support of its Motion for Protective Order (Docket Entry 80) and the portions of said memorandum discussing that exhibit, all qualify for protection from public disclosure.[15] The Court, however, concludes that, under either a Rule 26(c) good cause standard or a common-law access balancing test, ConvaTec has presented insufficient information to warrant any restriction on the

_____

[15] Further, to the extent the common-law access balancing test would require consideration of options short of sealing, see, e.g., Virginia Dept. of State Police, 386 F.3d at 576, the Court finds no other plausible course in this case. Unlike with the memoranda (which have been redacted, rather than sealed in their entirety), the pervasive nature of the sensitive information throughout the documents at issue makes redaction pointless. See Harrell v. Duke Univ. Health Sys., Inc., C.A. No. 7:07-813-HMH, 2007 WL 4460429, at *1 (D.S.C. Dec. 18, 2007) (unpublished) ("[T]he court finds that it is not possible to redact the records because it would render them meaningless.").

disclosure of Exhibits 8 and 9 to its Memorandum in Support of its Motion to Compel (Docket Entry 57) and the portions of said memorandum discussing those exhibits. In this regard, the Court observes that: 1) ConvaTec has not shown whether the deposition transcript excerpt in Exhibit 8 was disclosed in any public filing or court proceeding in the case in which it was taken; and 2) ConvaTec has not indicated whether the trial transcript excerpt in Exhibit 9 constituted part of a sealed proceeding or occurred in open court. In other words, if the testimony reflected in the foregoing transcript excerpts was disclosed in a separate, prior filing or proceeding, any restriction on public access to that same information in this case would serve no purpose.

Accordingly, ConvaTec's first Motion to Seal (Docket Entry 58) will be granted in part and denied in part and ConvaTec's second Motion to Seal (Docket Entry 81) will be granted. By April 12, 2010, ConvaTec shall file either: 1) a revised version of Docket Entry 57 captioned as "Amended Partially Sealed and Redacted Memorandum in Support of Motion to Compel" that conforms to the terms of this Memorandum Opinion and Order; or 2) a motion for reconsideration in which it shows cause why Exhibits 8 and 9 to Docket Entry 57 should remain sealed and the portions of said memorandum related to those exhibits should remain redacted.

### III. CONCLUSION

The Court finds good cause to amend the Joint Stipulated Scheduling Order to extend the time for fact and expert discovery, as well as disclosure of expert reports, but does not find good

-26-

cause to alter said order's provisions regarding amendment of pleadings or addition of parties. Further, the Court concludes that ConvaTec's two motions to seal involve items to which no public right of access attaches and that, whether examined under a "good cause" standard or the "competing interests" test (that would govern if a common-law access right did apply), certain documents should remain sealed, but two items should be unsealed.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Amend Scheduling Order (Opposed) (Docket Entry 70) is **DENIED** as moot, and Plaintiffs' Amended Motion to Amend Scheduling Order (Opposed) (Docket Entry 75) is **GRANTED IN PART AND DENIED IN PART** as set out in the body of this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Defendant ConvaTec's first Motion to Seal (Docket Entry 58) is **GRANTED IN PART AND DENIED IN PART** as set out in the body of this Memorandum Opinion and Order. By April 12, 2010, ConvaTec shall file either: 1) a revised version of Docket Entry 57 captioned as "Amended Partially Sealed and Redacted Memorandum in Support of Motion to Compel" that conforms to the terms of this Memorandum Opinion and Order; or 2) a motion for reconsideration in which it shows cause why Exhibits 8 and 9 to Docket Entry 57 should remain sealed and why the portions of said memorandum related to those exhibits should remain redacted.

**IT IS FURTHER ORDERED** that Defendant ConvaTec's second Motion to Seal (Docket Entry 81) is **GRANTED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 2, 2010

-27-