## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KINETIC CONCEPTS, INC., )
KCI LICENSING, INC., KCI USA, )
INC., KCI MEDICAL RESOURCES, )
MEDICAL HOLDINGS LIMITED, KCI )
MANUFACTURING and WAKE FOREST )
UNIVERSITY HEALTH SCIENCES, )
                             )
         Plaintiffs, )
                             )
         v. )     1:08CV00918
                             )
CONVATEC INC., )
BOEHRINGER WOUND SYSTEMS, LLC, )
and BOEHRINGER TECHNOLOGIES, LP, )
                             )
         Defendants. )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a Motion to Compel (Docket Entry 56) filed by Defendant ConvaTec Inc. ("ConvaTec"). In said motion, ConvaTec asks this Court to compel Plaintiffs Kinetic Concepts, Inc., KCI Licensing, Inc., KCI USA, Inc., KCI Medical Resources, Medical Holdings Limited, KCI Manufacturing (collectively "KCI") and Wake Forest University Health Services ("WFUHS" and, collectively with KCI, "Plaintiffs") and two related third-parties to produce certain items in response to ConvaTec's discovery requests. (Docket Entry 56 at 1-2.) For the reasons that follow, the Court will grant in part ConvaTec's motion.

### I.  BACKGROUND

This patent infringement action (instituted upon Plaintiffs' filing of a Complaint on December 18, 2008 (Docket Entry 1)) centers around certain patents involved in KCI's wound care product, the Vacuum Assisted Closure System ("VAC"), specifically

U.S. Patent Nos. 7,216,651 ("'651"), 5,636,643 ("'643"), 5,645,081 ("'081"), and 7,198,046 ("'046"). (Docket Entry 4 at ¶¶ 15, 17.) Doctors Louis Argenta and Michael Morykwas made the patented discoveries (Docket Entry 57 at 7[1]), and Mr. Donald Piper, Esq., directed the prosecution and subsequent reexamination of said patents before the United States Patent and Trademark Office (id. at 7). These patents were acquired on behalf of WFUHS, which exclusively licensed them to KCI for use with the VAC. (Docket Entry 4 at ¶¶ 17-22.) Dr. David Zamierowski allegedly held U.S. Patent No. 4,969,880 ("'880") (regarding a "wound dressing and treatment method") which potentially related to and pre-existed the patents held by Plaintiffs. (Docket Entry 57 at 9, 10 & n.5.)

In June 2007, Defendants Boehringer Wound Systems, LLC, and Boehringer Technologies, LP (collectively "Boehringer") allegedly met with "Plaintiffs"[2] to discuss a business agreement regarding Boehringer's wound treatment product, the Engenex System, but they did not reach an agreement. (Docket Entry 57 at 12.) In this action, Plaintiffs claim that Boehringer's Engenex System (with which ConvaTec has become associated) incorporates Plaintiffs' patents. (Docket Entry 4 at ¶¶ 23, 24 and 26.)

---

[1] Citations to this and other memoranda from ConvaTec refer to page numbers in the CM/ECF footer, not the memoranda's internal pagination (which uses a convention that does not assign Arabic numerals to certain initial pages).

[2] ConvaTec states that Boehringer met with "Plaintiffs" without specifying whether the meeting included WFUHS and KCI or only KCI. (See Docket Entry 57 at 12.) A recent filing by Defendants indicates that only KCI participated in the meeting. (Docket Entry 139 at 4-5.)

<u>A. Defendants' First Set of Document Requests</u>

On April 29, 2009, Boehringer and ConvaTec (collectively "Defendants") served Plaintiffs with Defendants' First Set of Document Requests. (Docket Entry 57 at Ex. 1.) Defendants requested that Plaintiffs produce 46 categories of documents "for inspection and copying at the offices of [Defendants' lead counsel] . . . <u>within thirty (30) days after service</u> of this request, or at such other time and place as may hereafter be agreed upon by counsel." (<u>Id.</u> at Ex. 1, p. 1 (emphasis added).)[3] On May 22, 2009, Defendants' counsel wrote to Plaintiffs' counsel about "Plaintiffs' electronically-stored information" ("ESI") and identified certain categories of materials in which "Defendants [we]re most interested." (<u>Id.</u> at Ex. 20, p. 1.) At the end of the letter, Defendants' counsel stated: "Please let us know promptly when we can expect to receive documents." (<u>Id.</u> at Ex. 20, p. 2.)

On May 29, 2009, Plaintiffs served Defendants with "Plaintiffs' Objections and Responses to Defendants' First Set of Document Requests." (<u>Id.</u> at Ex. 2.)[4] In that response, Plaintiffs first stated "General Objections," such as "Plaintiffs object to the Requests to the extent they seek to impose obligations beyond those required by the Federal Rules of Civil Procedure and/or the

---

[3] For exhibits that contain a single item with its own pagination, page citations refer to such page numbers (rather than the CM/ECF footer page numbers which begin numbering with the exhibit cover page); however, if an exhibit contains multiple items and/or no independent pagination, the CM/ECF footer page numbers will be used.

[4] Said document bears the signature of R. Laurence Macon over a listing of eight different "attorneys for Plaintiffs." (Docket Entry 57 at Ex. 2, p. 30.)

Local Rules for the Middle District of North Carolina." (Id. at Ex. 2, pp. 1-2.) Plaintiffs thereafter addressed ConvaTec's 46 document requests with what they called "Responses and Specific Objections to Document Requests." (Id. at Ex. 2, pp. 2-29.)

Two-thirds of the "Responses and Specific Objections" consist entirely of all or some portion of the following boilerplate:

> Plaintiffs object to this Request because it is overly broad and unduly burdensome and it seeks information not relevant to this case, nor reasonably calculated to lead to such information. Plaintiffs also object to this Request because it seeks information that is protected by the attorney-client privilege, the work product doctrine, the investigative privilege and other applicable privileges or protections. Plaintiffs also object to this request because it seeks proprietary and confidential information that Plaintiffs should not be required to produce prior to entry of a Protective Order. Subject to and without waiving any objection set forth above, Plaintiffs will produce the relevant non-privileged documents in its [sic] possession, custody or control.

(Id. at Ex. 2, p. 2; see id. at Ex. 2, pp. 3-29.)[5]

Most of the remaining third of the responses differed only in that, besides recycling some or all of the foregoing boilerplate, Plaintiffs added one or more of these other stock phrases:

1) "Plaintiffs also object to this Request because it seeks information that is not in their possession, custody, or control, or that does not exist" (id. at Ex. 2, p. 10);

---

[5] For eight of the "Responses and Specific Objections," Plaintiffs omitted the sentence, "Subject to and without waiving any objection set forth above, Plaintiffs will produce the relevant non-privileged documents in its [sic] possession, custody or control" (Docket Entry 57 at Ex. 2, pp. 11, 15, 21, 23, 24, 28 and 29), thus indicating that they would not produce any documents.

-4-

2) "Plaintiffs also object to this Request because it is unreasonably cumulative or duplicative, or the information can be obtained from another source that is more convenient, less burdensome or less expensive" (id. at Ex. 2, pp. 11, 12 and 24);

3) "Plaintiffs also object to this request to the extent it requires Plaintiffs to produce information that may be subject to a protective order or confidentiality agreement with a non-party" (id. at Ex. 2, pp. 14-16 and 24-26); and

4) "Plaintiffs also object to this Request because it is premature" (id. at Ex. 2, pp. 28, 29).

Only four of the 46 "Responses and Specific Objections" contained any non-boilerplate information:  in one such instance, Plaintiffs supplemented their stock overbreadth/burdensomeness/ relevance objection line with the phrase "particularly with regard to patent applications" (id. at Ex. 2, p. 6) and, at the end of three of the responses, Plaintiffs appended to the overbreadth/ burdensomeness/relevance boilerplate the words "particularly with respect to Defendants' request regarding foreign patent offices" (id. at Ex. 2, p. 8), "particularly with respect to foreign patent proceedings" (id. at Ex. 2, p. 11), or "particularly as it relates to foreign patent proceedings" (id. at Ex. 2, p. 12).

On or about May 30, 2009, Plaintiffs apparently forwarded Defendants "two dvds" containing "Plaintiffs' document production at KCI_CON 00000001-KCI_CON00063768."  (Id. at Ex. 15, p. 2.) According to an e-mail from Defendants' counsel two days later, in the letter accompanying the "dvds," Plaintiffs' counsel promised to

-5-

"supplement [the] production when agreement on the protective order
is reached." (Id.) Defendants' counsel replied: "There is no
reason to hold up production. Please send all Plaintiffs'
responsive documents immediately. Please let us know by tomorrow
when production of Plaintiffs' documents will be completed. . . .
To the extent you have not produced ESI or are holding off on
production, we would like a meet and confer tomorrow." (Id.)

    B.  Initial Negotiations over Defendants' Document Requests

    At the request of Plaintiffs' counsel, the meeting requested
by Defendants' counsel was scheduled for June 4, 2009. (Id. at Ex.
16, p. 2.)  In advance of that meeting, Defendants' counsel
forwarded Plaintiffs' counsel these six topics for discussion:

    1) "KCI_Con 15399-20000 are missing";

    2) "Plaintiffs' infringement contentions rely on certain
documents . . . without identifying where those documents exist";

    3) "[t]he June 1 production is not text searchable";

    4) Defendants wish to know "[w]hen Plaintiffs' production will
be complete" and "to discuss any responsive, non-privileged
documents which Plaintiffs are presently withholding";

    5) Defendants wish to know "[w]hen Plaintiffs will produce ESI
responsive to the categories of documents identified in
[Defendants' counsel's] May 22 letter, and when that production
will be complete"; and

    6) "there is no reason for Plaintiffs to hold up production
until an agreement is reached over the protective order."
(Id. at Ex. 16, p. 2 (emphasis added).)

                              -6-

The materials submitted to the Court do not reflect what, if anything occurred at any meeting on June 4, 2009; however, prior to that scheduled conference, Plaintiffs' counsel responded to the six topics identified by Defendants in relevant part as follows:

1) the missing "KCI_Con" documents "should have been included" and would be delivered "by [June 8, 2009]" (id. at Ex. 17, p. 2);

2) the documents cited in "Plaintiffs' infringement contentions" appear "in the product literature provided to [Plaintiffs] by [D]efendants, except for [one document], which will be produced by [June 8]" (id.);

3) "We will re-produce the [files in searchable format] by [June 8] . . . **if** we receive written confirmation [Defendants will produce documents in that] format" (id. (emphasis in original));

4) "Our goal will be to have substantially all of the production complete . . . three weeks from the deadline for the document responses if [D]efendants will agree to [produce documents responsive to Plaintiffs' requests] . . . on a rolling basis beginning June 15 [with a goal of being] substantially complete 3 weeks later . . . . [W]e will plan to send some additional new production for delivery on Monday . . ., again later next week, and the following week. . . . There are not any specific responsive, non-privileged documents that we are aware of that are being withheld at this time, but we are still in the process of reviewing for production. We believe it will make more sense to have that discussion once our production is substantially complete . . . ." (id. at Ex. 17, p. 3 (internal parentheses omitted));

-7-

5) "We are in the process of collecting the responsive ESI . . . and will plan to have substantially all of it produced within the next two weeks" (id.); and

6) "We will agree not to hold up further production if [D]efendants will agree (i) to treat all documents produced as outside attorneys eyes only until the protective order has been finalized and . . . (ii) to destroy and replace any production we provide now that does not contain confidentiality designations [consistent with the protective order ultimately adopted]" (id.).

On July 10, 2009, Defendants' counsel sent an e-mail to Plaintiffs' counsel that stated in relevant part as follows:

> We are still awaiting production of substantial documents from Plaintiffs.  The last production you sent was on June 5, which included KCI_Con 15399-20000 . . . and [a text-searchable] version of the May 30th production. When can we expect the remaining documents? . . .
>
> We have no problem with your proposed conditions . . . [limiting availability of produced documents to] outside counsel eyes only, and substitution later.
>
> Please also produce immediately [documents] . . . relied on in Plaintiffs' Infringement Contentions.  Those are long overdue.
>
> Your June 4 email stated that you were unaware of any documents being withheld.  Please confirm that no responsive documents are being, or will be, withheld for Defendants' Request Nos. 13, 19, 30, 34, 35, 36, 43, and 46.

(Id. at Ex. 18, p. 2 (emphasis added).)

On July 14, 2009, Defendants' counsel followed up with an e-mail noting that Plaintiffs' counsel had not responded to the above-quoted July 10 e-mail and asking for a "response by tomorrow . . . [or a date this week] for a meet and confer to discuss

-8-

Plaintiffs' failure to produce documents." (Id. at Ex. 18, p. 2.)

Plaintiffs' counsel responded as follows on July 16, 2009:

> We had not produced additional documents because we
> understood from our last conversation that your team
> wanted to review the protective order and get back to us
> with proposed revisions before additional documents were
> produced to avoid the need to substitute a substantial
> number of documents with confidentiality labels after
> agreement was reached. We understood you would be
> getting back to us regarding the protective order within
> a few days from our conference on June 4, and sent us
> [sic] follow-up email, but never heard back from you.
> Also, Boehringer's and Convatec's [sic] production is
> long past due, and we have not received a single
> document, notwithstanding the fact that we have already
> produced more than 60,000 pages of documents. Now that
> defendants have agreed to the conditions [regarding
> handling of produced documents pending finalization of a
> protective order], and based on your representations that
> we will begin receiving defendants' document production
> next week, we will likewise provide additional documents
> next week. Access to those documents must be limited to
> outside counsel only, and they will need to be replaced
> with documents with confidentiality labels once agreement
> on the protective order is reached. We will be happy to
> set up a conference call if you feel we need to discuss
> these issues further.

(Id. at Ex. 19, p. 2 (emphasis added).)[6]

On July 23, 2009, Plaintiffs' counsel sent the following e-mail to Defendants' counsel:

> Please confirm that you will begin producing documents
> this week. On July 10, 2009, you indicated that you
> would be producing documents the following week; however,
> that time has come and gone and we have still received no
> documents. We are prepared to produce a second set of
> documents this week pursuant to my email of July 16 if
> you will promptly notify us that you also plan to produce
> documents this week.

---

[6] Said e-mail identifies the sender as "Larry Macon." (Docket Entry 57 at Ex. 19, p. 2.)

(<u>Id.</u> at Ex. 30, pp. 2-3 (emphasis added).)[7]  Within ten minutes, Defendants' counsel responded as follows:

> We will be producing ConvaTec documents tomorrow.  We are continuing to collect and process responsive documents, and will produce them on a rolling basis.
>
> <u>Your efforts, however, to hold off production are improper.</u>  Plaintiffs' documents are long overdue.
>
> Further, despite repeated requests in my June 3 and July 10 letters, Plaintiffs have not produced any responsive documents other than the missing pages from Plaintiffs' May 30th production produced on June 5.  ConvaTec served its document requests 2 weeks prior than Plaintiffs and we would expect Plaintiffs to have completed their production by now.

(<u>Id.</u> at Ex. 30, p. 2 (emphasis added).)  That evening, Plaintiffs' counsel replied:  "We will also be producing documents tomorrow and are likewise continuing to collect and process responsive documents that will be produced on a rolling basis."  (<u>Id.</u>)

According to ConvaTec, "despite [the above-quoted] e-mails between ConvaTec and Plaintiffs in June and July 2009 discussing these discovery deficiencies, Plaintiffs [sic] production remained inadequate.  A meet and confer was held on July 28, 2009, where Plaintiffs' counsel assured Defendants that all documents responsive to Defendants' Rule 26(f) Report and May 22 discovery letter had been produced by Plaintiffs."  (<u>Id.</u> at 14-15 (internal citations and footnote omitted).)

---

[7] Said e-mail identifies the sender as R. Laurence Macon.  (Docket Entry 57 at Ex. 30, p. 3.)  Unlike the prior e-mails quoted above, said e-mail does not reflect delivery to Plaintiffs' local counsel.  (<u>See</u> <u>id.</u> at Ex. 30, p. 2.)

C.  The Parties' Negotiations Begin Breaking Down

On August 27, 2009, Defendants' counsel sent (via e-mail) a four-plus-page, single-spaced letter to Plaintiffs' counsel asserting that, notwithstanding assurances made at the July 28 meeting, "there remain serious deficiencies in Plaintiffs' May 30 and July 24, 2009 document productions to [four] categories, that we request KCI correct immediately." (<u>Id.</u> at Ex. 21, p. 1.)  The letter thereafter identifies the four categories as:

1) "Research and development, conception and reduction to practice" (<u>id.</u>)[8];

2) "Documents authored by Drs. Morykwas and Argenta supporting or refuting statements during prosecution that (a) to promote healing, the application of a negative pressure to the wound of about 0.1 is required; (b) if the pore size of the screen means is too small, the growth of new tissue will be inhibited" (<u>id.</u> at Ex. 21, p. 2);

3) "Correspondence between Plaintiffs and David S. Zamierowski, or otherwise concerning David S. Zamierowski, regarding his patents or negative pressures wound therapy, including all monies paid" (<u>id.</u>); and

---

[8] As to this category, the letter specifically notes that "Plaintiffs' production of selected pages from what may be laboratory notebooks is insufficient. Further, the pages appear out of sequence, illegible and do not contain any cover pages.  We ask that Plaintiffs immediately produce all laboratory notebooks, and related materials, authored by the named inventors and/or their associates, in their entirety." (Docket Entry 57 at Ex. 21, p. 2.)

4) "Prior art cited against Plaintiffs in the Related U.S. and Foreign Litigations and Patent Office Proceedings" (id. at Ex. 21, p. 3).

For each category, the letter offers a detailed description of documents Defendants perceive as missing from Plaintiffs' prior production (as well as the basis for such perception and the related document request numbers) and asks for "immediate" or "prompt" production of the items at issue (or, alternatively, confirmation that such documents either "do not exist" or "that the production is complete with respect to these documents"). (Id. at Ex. 21, pp. 1-4.)[9] Following that discussion, the letter states: "we assume, based on our document requests and Plaintiffs' lack of substantive objections, that the production will include all expert reports, transcripts (depositions, hearing, trial, and appellate proceedings), affidavits and decisions from the Related Litigations and Proceedings." (Id. at Ex. 21, p. 4 (emphasis added).) The letter gives examples of both documents and related actions and cites the corresponding document request numbers. (Id.)

Plaintiffs' counsel later contended that, "[o]n August 28, 2009 [Plaintiffs' counsel] responded to [the above-referenced] letter [from Defendants' counsel] dated August 27, 2009, complaining about Plaintiffs' document production." (Id. at Ex. 23, p. 1.) According to Defendants' counsel, however, Plaintiffs'

_____

[9] For two categories, the letter notes that Plaintiffs had not lodged "substantive objections" to Defendants' requests. (Docket Entry 57 at Ex. 21, pp. 1, 2.)

-12-

counsel's "August 28 letter replied only with an acknowledgment that [Plaintiffs' counsel] were 'reviewing the specific questions raised . . . and will respond in due course, as production continues.'" (Id. at Ex. 24, p. 1.)[10]

On September 25, 2009, Defendants' counsel sent Plaintiffs' counsel an e-mail stating in relevant part:

> In reviewing KCI's documents, it appears that KCI did not produce the requested documents concerning Zamierowski (See Doc Reqs 18-19), including documents referred to in our August 27 letter to you. We did not receive a substantive response to our August 27 letter. Please let us know promptly if you will produce the requested documents, or we will have to seek the Court's assistance. We are available Monday [September 28, 2009] for a call if needed.
>
> Also, please let us know, by Monday if possible, whether you will accept a subpoena for Dr. Zamierowski, or if we should serve it on him personally.

(Id. at Ex. 22, p. 2 (emphasis added).) According to Defendants' counsel, based on their foregoing September 25 e-mail "another meet and confer [was set] for September 30[, 2009]. Plaintiffs did not provide any substantive response to [the above-quoted August 27 letter and September 25 e-mail] until hours before the September 30 meet and confer." (Id. at 15 (internal footnote omitted).)

The record does reflect that, on September 30, 2009, Plaintiffs' counsel sent Defendants' counsel a letter (via e-mail) described as a "further response to the August 27 correspondence

_____

[10] It does not appear that any of the parties submitted a copy of said August 28 letter to the Court in connection with the instant motion.

-13-

[from Defendants' counsel]." (<u>Id.</u> at Ex. 23, p. 1.)[11]  The first

substantive paragraph of the September 30 letter states as follows:

> As a preliminary matter, <u>we are compelled to address the</u>
> <u>mischaracterization that Plaintiffs did not provide</u>
> <u>substantive objections to Request Nos. 1, 2, 9, 35 and</u>
> <u>36</u>.  As you are aware, Plaintiffs set forth substantive
> objections to each of the foregoing Requests pursuant to
> the Rules of Federal Civil Procedure in Plaintiffs'
> Objections and Responses to Defendants' First Set of
> Document Requests ("Plaintiffs' Responses"). Defendants'
> position is especially confounding with respect to
> Request Nos. 9, 35 and 36.  In response to Request No. 9,
> Plaintiffs specifically noted that the Request is "overly
> broad and unduly burdensome and it seeks information not
> relevant to this case, nor reasonably calculated to lead
> to such information, particularly with respect to
> Defendants' request regarding foreign patent offices."
> Further, <u>in response to Request Nos. 35 and 36,</u>
> <u>Plaintiffs did not agree to produce documents because</u>
> <u>these requests are, among other things, so overly broad</u>
> <u>that a complete response would require collecting,</u>
> <u>reviewing and potentially producing hundreds of thousands</u>
> <u>of pages of documents not relevant to this litigation.</u>
> However, despite Plaintiffs' objections to Request Nos.
> 35 and 36, in the spirit of cooperation, Plaintiffs have
> produced pleadings and court filings in connection with
> the U.S. litigation involving BlueSky and Richard Weston
> (Western District of Texas) and the current litigation
> involving Innovative Therapies, Inc. (Middle District of
> North Carolina).  Plaintiffs will also include in their
> next document production the live or final pleadings from
> all related U.S. litigation.

(<u>Id.</u> (emphasis added).)

Said letter then addresses the four, above-quoted categories

of documents discussed in Defendants' counsel's August 27 letter:

> As to the first and second categories . . . all <u>relevant</u>,
> responsive non-privileged documents have now been
> produced.

---

[11] Said letter bears the signature of R. Laurence Macon. (Docket Entry 57
at Ex. 23, p. 2.)  It does not reflect delivery to Plaintiffs' local counsel.
(<u>See</u> <u>id.</u> at Ex. 23, pp. 1-2.)

-14-

As to the third category . . . such documents are requested in connection with Request Nos. 18 and 19 – both of which Plaintiffs objected to in Plaintiffs' Responses. In fact, <u>Plaintiffs do not agree to produce *any* documents in response to Request No. 19</u>. However, in an effort to avoid unnecessary delay and discord, to the extent such documents have not already been produced, <u>Plaintiffs will produce agreements with Dr. Zamierowski and documents demonstrating monies paid to Dr. Zamierowski</u>.

As to the fourth category . . . Plaintiffs object to request as set forth in Plaintiffs' Responses. As to the specific request that Plaintiffs produce "all prior art cited by Smith & Nephew and/or Medela," to the extent such documents have not yet been produced, Plaintiffs will include in their next document production the prior art references relied upon by Smith & Nephew and Medela in the current U.S. litigation.

(<u>Id.</u> at Ex. 23, p. 2 (italics in original; other emphasis added).)

According to ConvaTec, shortly after delivery of the foregoing letter, "[t]he September 30, 2009 meet and confer was held via telephone among [three of Defendants' counsel] and Plaintiff's [sic] counsel including at least Mr. Macon." (<u>Id.</u> at 15 n.12.) ConvaTec reports that, during said meeting, in addition to re-affirming the document production commitments in the September 30 letter, "Plaintiffs' counsel agreed to accept service of ConvaTec's subpoena to Dr. Zamierowski . . . and [to produce] KCI's marketing and analysis documents." (<u>Id.</u> at 15-16 n.12.)

On October 2, 2009, Defendants' counsel sent (via e-mail) a three-plus-page, single-spaced letter to Plaintiffs' counsel "to confirm [the] discussions at [the] September 30, 2009 meet and confer, and to point out KCI's discovery deficiencies that still remain." (<u>Id.</u> at Ex. 24, p. 1.) After describing the agreements reached regarding further document production by Plaintiffs, the

-15-

letter declares that "[t]hese agreements, however, only cover a subset of the highly relevant documents that ConvaTec has been requesting for months." (Id. at Ex. 24, p. 2.) The letter then details (including with citations to bates-numbers from related portions of Plaintiffs' prior production, as well as the corresponding document request numbers) four issues as to which disputes remained: 1) "Dr. Zamierowski's Deposition and Documents"; 2) "Other Documents From Related Litigations"; 3) "Drs. Argenta and Morykwas' Documents"; and 4) Communications and Meetings With Boehringer." (Id. at Ex. 24, pp. 2-3.)[12]

As to the first such category, Defendants' counsel stated:

> [I]n the spirit of cooperation, <u>we are narrowing our requests here as a final effort to obtain these documents without motion practice</u>, and without prejudice if the need arises for additional documents, as follows: <u>All documents concerning any communications with David Zamierowski concerning</u> (1) <u>[the '880 patent] and/or any patent or patent application claiming priority to U.S. Patent Application No. 332,699</u>, (2) <u>wound drainage involving suction and/or wound healing involving suction</u>, and/or (3) <u>any agreements related to the foregoing</u>. Additionally, yesterday I served upon you our subpoena to Dr. Zamierowski calling for the production of certain categories of documents. We request that KCI search its own files for these same categories of documents, which are subsumed by ConvaTec's Document Requests to KCI, including, but not limited to, <u>documents</u> (1) <u>concerning the prosecution or analysis of any patent naming Dr. Zamierowski as an inventor</u>, (2) <u>concerning the types of intermediate and covering layers disclosed in any patent naming Dr. Zamierowski as an inventor</u>, and (3) <u>concerning</u>

---

[12] At the end of this section of the letter, Defendants' counsel also separately listed and briefly discussed "KCI's Market Analysis Documents"; however, in so doing, Defendants' counsel did not identify any lack of agreement, but rather noted (as under the earlier heading of "Agreements Reached" (Docket Entry 57 at Ex. 24, p. 2)) that "KCI indicated that it had or will produce its business and market analysis that would reflect, *e.g.*, competitors in the marketplace" (Id. at Ex. 24, p. 4).

the use of a vacuum manifold to treat wounds. We believe that this sufficiently limits ConvaTec's requests to address your concerns.

Further, ConvaTec has requested all documents produced in the Related Litigations, which should include any production by or for Dr. Zamierowski in those litigations. KCI's production of such documents appears to be incomplete, as many exhibits from Dr. Zamierowski's prior deposition have not been produced.

(Id. at Ex. 24, pp. 2-3 (internal citations and footnote omitted) (emphasis added).)

As to the other three categories of documents that remained in dispute, the October 2 letter declares:

You indicated in your September 30 letter to me that KCI would only produce "pleadings and court filings" from the Related Litigations. Please confirm that KCI will also produce other relevant documents that are not pleadings and court filings . . ., such as contentions, expert reports, and deposition transcripts . . . .

You indicated in your September 30 letter to me that KCI's production of documents concerning Drs. Argenta and Morykwas' research and development and conception and reduction to practice is complete. ConvaTec continues to disagree that this is the case because KCI has produced only select pages from certain laboratory notebooks, instead of producing the entire notebook. The entire notebooks are relevant and/or potentially necessary for at least the reasons of authenticity, ownership and context. Please immediately produce the entire laboratory notebooks . . . .

KCI has only produced a small subset of emails concerning its meeting(s) with Boehringer. These emails indicate that KCI held one or more meetings with Boehringer regarding Boehringer's proposed product. Documents concerning these meetings are highly relevant . . . and should be produced promptly. If no such non-privileged documents exist, then please state so.

(Id. at Ex. 24, p. 3 (internal citations omitted) (emphasis added).)

-17-

"For each of the[se] outstanding items," Defendants' counsel asked Plaintiffs' counsel to "please advise by October 7 whether KCI will make a full production in response to those requests, and by when it will do so." (Id. at Ex. 24, p. 2.) Defendants' counsel further gave notice of their "availab[ility] for a <u>final meet and confer on or before October 7, 2009</u>, to discuss the remaining outstanding issues if [Plaintiffs' counsel] believe that is necessary." (Id. (emphasis added).) ConvaTec has reported that, as of October 22, 2009, "Plaintiffs ha[d] failed to respond to ConvaTec's October 2 letter . . . ." (Docket Entry 57 at 15.)

D. The Zamierowski and Piper Subpoenas

As the foregoing letter indicates, the day before (October 1, 2009), with Plaintiffs' consent, ConvaTec served Plaintiffs' counsel with a subpoena for Dr. Zamierowski (including 19 requests for documents to be produced at the office of Defendants' lead counsel on October 15, 2009). (Id. at Ex. 6.) Plaintiffs responded with objections to those document requests on October 15, 2009. (Id. at Ex. 7.)[13] The format of those objections largely mirrored Plaintiffs' response to ConvaTec's earlier document requests. (Compare id. with id. at Ex. 2.) Plaintiffs set out "General Objections" (id. at Ex. 7, pp. 2-4), followed by 19

---

[13] Plaintiffs' counsel actually served separate responses to these document requests on behalf of Dr. Zamierowski and Plaintiffs; however, no material differences appear to exist between the two responses. (Compare Docket Entry 57 at Ex. 7, pp. 2-18 with id. at Ex. 7, pp. 20-35.) Both responses bear the signature of R. Laurence Macon over the names of eight "attorneys for Plaintiffs." (Id. at Ex. 7, pp. 18 and 35-36.) For convenience, references herein will be made only to the response filed on behalf of Dr. Zamierowski.

-18-

separate "Specific Objections to Document Categories for Production" (id. at Ex. 7, pp. 4-18). Each of the these "Specific Objections" actually consisted (with but one exception) entirely of the same type of boilerplate as did Plaintiffs' earlier objections. (Compare id. with id. at Ex. 2, pp. 2-29.) For example, as to "Document Category No. 1," Plaintiffs' counsel stated only:

> Dr. Zamierowski objects to this document category to the extent it seeks for [sic] information that is neither relevant to the claim or defense of any party nor reasonably calculated to lead to such information, particularly with respect to foreign litigations and/or judicial proceedings and involving any "Related Patent Application." Dr. Zamierowski also objects to this document category because it is unreasonably cumulative or duplicative, or the information can be obtained from another source that is more convenient, less burdensome, or less expensive. Dr. Zamierowski also objects to this document category because it places a burden on him that outweighs its likely benefit. Dr. Zamierowski also objects to this document category because it is overly broad and unduly burdensome. Dr. Zamierowski also objects to this document category to the extent it seeks to impose obligations beyond those required by the Federal Rules of Civil Procedure. Dr. Zamierowski also objects to the lack of timeframe in this document category.

(Id. at Ex. 7, pp. 4-5 (emphasis added).)[14] All of the other 18 "Specific Responses" consist entirely of the foregoing and other stock phrases. (See id. at Ex. 7, pp. 4-18.)[15]

---

[14] The underlined portion of this response appears to constitute the only non-boilerplate words in any response. (See Docket Entry 57 at Ex. 7, pp. 4-18.)

[15] Plaintiffs also use these boilerplate lines: 1) "Dr. Zamierowski objects to this document category to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, the investigative privilege and/or other applicable privileges or protections" (id. at Ex. 7, pp. 5-9, 11-17); and 2) "Dr. Zamierowski also objects to this document category to the extent it seeks information that is not in his possession, custody, or control, or that does not exist" (id. at Ex. 7, pp. 6-14, 17, and 18).

Plaintiffs' earlier response to Defendants' First Set of Document Requests does differ from Plaintiffs' above-cited response to the Zamierowski subpoena in one important respect; in the former response, Plaintiffs committed to produce some documents for most requests, whereas, in the latter response, Plaintiffs gave no indication that any documents would be produced as to any requests. (Compare id. at Ex. 2, pp. 3-29 with id. at Ex. 7, pp. 4-18.)

On October 16, 2009 (the day after service of the foregoing response), Defendants' counsel sent Plaintiffs' counsel an e-mail stating: "We received Dr. Zamierowski and KCI's objections to ConvaTec's subpoena to Dr. Zamierowski. Please let me know your availability for Monday, Oct. 19, for a meet and confer to discuss these objections." (Id. at Ex. 27, p. 3 (emphasis added).)

On October 18, 2009, Plaintiffs responded to a subpoena Defendants' counsel had served on Mr. Piper (the attorney who prosecuted and handled the re-examination of Plaintiffs' patents at issue). (Id. at Ex. 13.)[16] That response mirrored Plaintiffs' response to the subpoena for Dr. Zamierowski; specifically, it consisted entirely of the same boilerplate objections and indicated no intent to produce any documents. (See id. at Ex. 13, pp. 2-13.)

---

[16] Defendants had served the Piper subpoena on October 5, 2009, and requested production of documents on October 19, 2009, at the office of Defendants' lead counsel. (Docket Entry 57 at Ex. 12.) As with the Zamierowski subpoena, Plaintiffs' counsel made separate responses on behalf of Mr. Piper and Plaintiffs to the Piper subpoena; however, no material differences appear to exist between the two. (Compare id. at Ex. 13, pp. 2-13 with id. at Ex. 7, pp. 16-27.) Both responses bear the signature of R. Laurence Macon over the names of eight "attorneys for Plaintiffs." (Id. at Ex. 7, pp. 13-14 and 27-28.) References herein will be made only to the response filed on behalf of Mr. Piper.

E.  The Filing of the Motion to Compel and Post-filing Events

On October 20, 2009, Defendants' counsel sent another e-mail to Plaintiffs' counsel; it stated:  "[W]e did not receive a response to our request on [October 16, 2009] for a meet and confer yesterday.  Please let us know promptly when you are available, so we can avoid unnecessarily burdening the Court.  In addition to the Zamierowski subpoena, we want to discuss Plaintiffs' objections to the Piper subpoena as well.  Plaintiffs' delay and refusals to cooperate are seriously hampering the case, given the fact discovery cutoff of December 3."  (<u>Id.</u> at Ex. 27, pp. 2-3.)  Later that day, Plaintiffs' counsel (in an e-mail identified as from "Larry Macon") responded:  "I apologize but Karen [Gulde, another of Plaintiffs' eight attorneys of record] and I are separately out of state all week in depositions.  What about 1:00 p.m. [on October 27, 2009,] for the call?" (<u>Id.</u> at Ex. 27, p. 2.).

Defendants' counsel immediately replied:  "[W]e are concerned that we cannot wait for a week to have the call, given the Dec. 3 discovery cutoff.  We have discussed several times already our concerns about Plaintiffs' responses.  So there seems to be little need to wait a week for you to reconsider.  We can have the call tonight after your deposition, but we are intending to seek the Court's assistance unless Plaintiffs agree to provide full responses to ConvaTec's requests." (<u>Id.</u>)  According to Defendants' counsel, Plaintiffs did not respond further.  (<u>See</u> <u>id.</u> at 15.)

On October 22, 2009, ConvaTec filed the instant Motion to Compel.  (Docket Entry 56.)  According to ConvaTec, as of the

-21-

filing of said motion, "Plaintiffs ha[d] failed to respond to ConvaTec's October 2 letter [seeking further production related to Defendants' First Set of Document Requests], and the document deficiencies [cited in the letter] remain[ed]. In addition, . . . Plaintiffs, as well as [Dr. Zamierowski and Mr. Piper], objected to the subpoenas [to said witnesses] in their entirety and did not produce any documents." (Docket Entry 57 at 15.)

As to its First Set of Document Requests, ConvaTec contended that Plaintiffs failed to produce requested documents regarding:

1) "Dr. Zamierowski's prior art patents' wound dressing and treatment methods, including the so-called 'Zam patch' (Requests Nos. 18-19, 36)";

2) Drs. Argenta and Morykwas' research work "concerning among other things the use of pressures below 80 mm Hg (Request Nos. 1-4, 7, 10, 17)";

3) "Plaintiffs' 2007 meetings(s) with Defendants Boehringer (Request No. 25)"; and

4) "Plaintiffs' marketing and sales documents concerning competitors in the marketplace (Request Nos. 32-33, 38-39)." (Docket Entry 56 at 1-2).

On November 16, 2009, Plaintiffs responded to ConvaTec's instant motion. (Docket Entries 63 and 64.) In so doing, Plaintiffs argued that ConvaTec "premature[ly]" moved to compel and "refused to wait for a meaningful meet and confer." (Docket Entry 64 at 2, 7.) Plaintiffs also contended that they were "not withholding or refusing to produce relevant, responsive, non-

privileged documents sought by ConvaTec in its *Motion to Compel*.
In fact, Plaintiffs have produced, to the best of their knowledge,
all documents sought by the *Motion to Compel*." (Docket Entry 64 at
1 (italics in original) (underline emphasis added).)

On November 17, 2009, the parties' counsel held a conference
regarding the discovery requests underlying ConvaTec's instant
Motion to Compel. (Docket Entry 65 at Ex. 31, pp. 1-2.) In
connection with that meeting:

1) "Plaintiffs stipulate[d] that they are only withholding
privileged documents regarding Plaintiffs' meetings with
Boehringer" (<u>id.</u> at Ex. 31, p. 1);

2) Plaintiffs agreed to "investigate the existence of any
inventors' lab notebooks and to the extent they exist and contain
relevant information will produce them or make them available for
inspection" (<u>id.</u> at Ex. 31, p. 2);

3) Plaintiffs agreed to "investigate the existence of patient
records that support research performed by Drs. Argenta and
Morykwas. If the patient records exist and have been produced,
Plaintiffs will identify the bates numbers. If the records exist
and have not been produced, Plaintiffs will produce them subject to
[federal health information privacy] restrictions." (<u>id.</u>);

4) Plaintiffs stated that they had no record of receiving the
letter from Defendants' counsel dated October 2, 2009, narrowing
Defendants' requests regarding Plaintiffs' communications with Dr.
Zamierowski (<u>id.</u>); and

-23-

5) Plaintiffs agreed "to determine if any documents were withheld from [Dr. Zamierowski's files] under any relevancy objections" and "to determine if [Mr. Piper's law firm] withheld any documents on the basis of any relevancy objections" (id.).[17]

On November 19, 2009, ConvaTec filed its Reply asserting that areas of dispute remained, including due to Plaintiffs' "refus[al] to produce _any_ substantive documents from their files concerning Dr. Zamierowski," failure to produce "the inventors' complete notebooks," and Plaintiffs' continued reliance on the qualification that they have produced all "relevant" documents. (Docket Entry 65 at 3, 5, and 8 (emphasis in original).) On November 30, 2009, and again on December 2, 2009, Plaintiffs sent Defendants a "Supplemental Document Production" to address, respectively, the lab notebook issue and Defendants' request for Plaintiffs' documents regarding Dr. Zamierowski. (Docket Entry 73 at Exs. F and G.) On December 9, 2009, Plaintiffs filed a Sur-Reply opposing the instant motion on the grounds that they complied with their discovery duties. (Docket Entry 73.)[18]

_____

[17] "Some documents [responsive to the Zamierowski and Piper subpoenas were] . . . produced on October 30 and November 2, [2009]" from the witnesses' files. (Docket Entry 65 at 7.) On November 24, 2009, Plaintiffs' counsel advised Defendants' counsel that neither Dr. Zamierowski nor Mr. Piper's law firm withheld documents based on relevancy objections. (Docket Entry 73 at Ex. H.)

[18] The Court will grant Plaintiffs' request to file their Sur-Reply (Docket Entry 72). In the same document in which Plaintiffs sought leave to file their Sur-Reply, Plaintiffs contend that the Court should ignore arguments raised in ConvaTec's Reply regarding the parties' conference on November 17, 2009. (Docket Entry 72 at 1-2.) Plaintiffs assert that such discussion contravenes this Court's Local Rule that "[a] reply brief is limited to discussion of matters newly raised in the response," M.D.N.C. R. 7.3(h). The Court will not ignore the

(continued...)

-24-

## II. DISCUSSION

In discussing ConvaTec's instant Motion to Compel, the Court first sets out the standard for compelling production of documents and then addresses Plaintiffs' contentions regarding ConvaTec's alleged premature filing of the instant motion (including its purported failure to consult properly prior to moving to compel), as well as the parties' substantive arguments regarding Plaintiffs' responses to ConvaTec's discovery requests.

### A. Standard for a Motion to Compel Production of Documents

In assessing a motion seeking an order requiring production of documents, the Court must consider the scope of discovery, the rules for requesting production of documents and responding to such requests, the obligations of counsel during discovery, and the procedure governing motions to compel.

#### 1. The Scope of Discovery

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. Accordingly, under the Federal Rules of Civil Procedure (the "Rules"), "[u]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is <u>relevant to any party's claim or defense</u> . . . ." Fed. R. Civ. P. 26(b)(1)

---

[18](...continued)
challenged parts of Defendants' Reply, but will consider Plaintiffs' rebuttal to such matters (as made in their Sur-Reply).

-25-

(emphasis added).[19]  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.  See also Elkins v. Broome, No. 1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial.  At discovery, relevancy is more properly considered synonymous with 'germane' as opposed to competency or admissibility."); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader.").

However, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."  Fed. R. Civ. P. 26(b)(1).  That cross-referenced provision sets out the following limitations:

> (i) the discovery sought is <u>unreasonably cumulative or duplicative</u>, or <u>can be obtained from some other source that is more convenient, less burdensome, or less expensive</u>;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

---

[19] Prior to December 1, 2000, said provision permitted "discovery regarding any matter, not privileged, which is <u>relevant to the subject matter in the pending action</u>," Fed. R. Civ. P. 26(b)(1) (1993) (emphasis added).  The Rules Committee altered this language in response to concerns that, "in some instances, particularly cases involving large quantities of discovery, parties [were] seek[ing] to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the 'subject matter' involved in the action."  Fed. R. Civ. P. 26 advisory committee's notes, 2000 Amendment, Subdivision (b)(1).  In order to secure discovery as to the "subject matter" of an action, a party now must obtain court authorization by showing "good cause."  Fed. R. Civ. P. 26(b)(1).

(iii) the <u>burden or expense of the proposed discovery</u>
<u>outweighs its likely benefit</u>, considering the needs of
the case, the amount in controversy, the parties'
resources, the importance of the issues at stake in the
action, and the importance of the discovery in resolving
the issues.

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). <u>See also</u> <u>Nicholas v.</u>
<u>Wyndham Int'l Inc.</u>, 373 F.3d 537, 543 (4th Cir. 2004) ("Even
assuming that this information is relevant (in the broadest sense),
the simple fact that requested information is discoverable . . .
does not mean that discovery must be had. On its own initiative or
in response to a motion for protective order under Rule 26(c), a
district court may limit [such discovery] . . . if it concludes
that [a limitation in Rule 26(b)(2)(C) applies]."); Fed. R. Civ. P.
26(c)(1) (stating that "court may, for good cause, issue an order
to protect a party or person from annoyance, embarrassment,
oppression, or from undue burden or expense, including . . .
forbidding . . . discovery [or] . . . inquiry into certain matters,
or limiting the scope of . . . discovery to certain matters").

Notwithstanding the foregoing limitations, the United States
Court of Appeals for the Fourth Circuit has declared that
"[d]iscovery under the Federal Rules of Civil Procedure is <u>broad in</u>
<u>scope and freely permitted</u>." <u>Carefirst of Md., Inc. v. Carefirst</u>
<u>Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 402 (4th Cir. 2003) (emphasis
added).[20] Moreover, the commentary to the Rules indicates that "[a]

---

[20] In so ruling, the Fourth Circuit did not expressly address the 2000
Amendment to Rule 26(b)(1) that narrowed, to some extent, the scope of discovery,
<u>see</u> Discussion, <u>supra</u>, n.19; however, the case before said court was filed after
that amendment took effect, <u>see</u> <u>Carefirst</u>, 334 F.3d at 395. Accordingly,
(continued...)

-27-

variety of types of information not directly pertinent to the
incident in suit could be relevant to the claims or defenses raised
in a given action.  For example, other incidents of the same type,
or involving the same product, could be properly discoverable under
the [governing] standard." Fed. R. Civ. P. 26 advisory committee's
notes, 2000 Amendment, Subdivision (b)(1).

<u>2.  Making and Responding to Document Requests</u>

The Rules provide a number of discovery devices, including
requests for production of documents, <u>see</u> Fed. R. Civ. P. 34.
Under this Rule, "[a] party may serve on any other party a request
within the scope of Rule 26(b): (1) to produce and permit the
requesting party or its representative to inspect [and] copy . . .
any designated documents or electronically stored information –
including writings . . . and other data or data compilations –
stored in any medium . . . ." Fed. R. Civ. P. 34(a). <u>See also</u>
Fed. R. Civ. P. 34(c) (providing that, through the use of a
subpoena under Rule 45, "a nonparty may be compelled to produce
documents"); Fed. R. Civ. P. 45 advisory committee's notes, 1991

---

[20](...continued)
<u>Carefirst</u>'s declaration that the Rules permit discovery "broad in scope" calls
into question authority suggesting that the 2000 Amendment significantly narrowed
the scope of discovery, <u>see</u>, <u>e.g.</u>, <u>Quality Aero Tech., Inc. v. Telemetrie</u>
<u>Elektronik, Gmbh</u>, 212 F.R.D. 313, 315 n.2 (E.D.N.C. 2002) ("The 2000 amendments
implicitly seek to farm out the 'fishing expeditions' previously allowed and
serve as an attempt to reduce the broad discovery which has heretofore been
afforded litigants in civil actions."), and bolsters the view "that the 2000
'amendments do not effect a dramatic change in the scope of discovery,'" <u>Elkins</u>,
2004 WL 3249257, at *2 (internal brackets omitted) (quoting 8 Charles A. Wright
et al., <u>Federal Practice and Procedure</u> § 2008 (Supp. 2003)); <u>see also</u> <u>United Oil</u>
<u>Co., Inc. v. Parts Assocs., Inc.</u>, 227 F.R.D. 404, 409 (D. Md. 2005) ("'The
present standard – "relevant to the claim or defense of any party" – is still a
very broad one.'" (quoting 8 Charles A. Wright et al., <u>Federal Practice and</u>
<u>Procedure</u> § 2008 (Supp. 2004))).

-28-

Amendment, Subdivision (a) ("The non-party witness is subject to the same scope of discovery under [Rule 45] as that person would be as a party to whom a request is addressed pursuant to Rule 34."). "The request: (A) must describe with reasonable particularity each item or category of items to be inspected; [and] (B) must specify a reasonable time, place, and manner for the inspection . . . ." Fed. R. Civ. P. 34(b)(1). <u>Accord</u> Fed. R. Civ. P. 45(a)(1)(A)(iii) (providing that subpoena must "specif[y] time and place . . . [for witness to] produce designated documents"); Fed. R. Civ. 45(c)(3)(A) ("[T]he issuing court must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply . . . .").

"The party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to [by the parties provided any extension does not interfere with dates set for the close of discovery or any hearing or trial] or be ordered by the court." Fed. R. Civ. P. 34(b)(2)(A). "For each item or category, the response must either state that inspection and related activities will be permitted <u>as requested</u> or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added).[21] <u>Accord</u>

---

[21] "An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C). Further, a party "who has responded to . . . [a] request for production . . . must supplement or correct its . . . response . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1). If a litigant fails to supplement, the Rules provide for automatic exclusion of the information at issue (absent substantial justification or lack
(continued...)

Fed. R. Civ. P. 45(c)(2)(B) ("A person commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection to inspecting [or] copying . . . any or all of the material . . . .  The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); Fed. R. Civ. P. 45(d)(1)(A) ("A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize them to correspond to the categories in the demand."). "[A]n evasive or incomplete . . . response must be treated as a failure to . . . respond."  Fed. R. Civ. P. 37(a)(4).

As one court has summarized it:

> [T]here are only three appropriate responses to a request for production of documents:  (1) an objection to the scope, time, method and manner of the requested production; (2) an answer agreeing to the requested scope, time, place, and manner of production; or (3) or [sic] a response offering a good faith, reasonable alternative production, which is definite in scope, time, place or manner.

Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 173 F.R.D. 651, 656 (D. Md. 1997).  Although "[a] party may file a hybrid answer, which objects to some of the requested production, while answering the unobjectionable portions," id. at 656 n.14, "a response to a request for production of documents which merely promises to produce the requested documents at some unidentified time in the future, without offering a specific time, place and manner, is not a complete answer as required by Rule 34(b) and, therefore,

---

[21](...continued)
of prejudice) and permit other sanctions.  See Fed. R. Civ. P. 37(c)(1).

pursuant to [the provision now codified at Rule 37(a)(4)] is treated as a failure to answer or respond," id. at 656.

Further, "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Accord Fed. R. Civ. P. 45(d)(2)(A) (adopting same rule for subpoenaed items withheld "under a claim that it is privileged or subject to protection as trial-preparation material"). See also United States v. Bornstein, 977 F.2d 112, 116 (4th Cir. 1992) (holding that one who invokes a privilege "bear[s] the burden of proving that [it] applies"); RLI Ins. Co. v. Conseco, Inc., 477 F. Supp. 2d 741, 751 (E.D. Va. 2007) ("[I]t is incumbent upon the proponent to specifically and factually support his claim of privilege.").

Finally, magistrate judges in at least five district courts in the Fourth Circuit have declared boilerplate objections to discovery requests, including for documents, invalid. See, e.g., Barb v. Brown's Buick, Inc., No. 1:09CV785, 2010 WL 446638, at *1 (E.D. Va. Feb. 2, 2010) (unpublished) ("Defendant's objections to plaintiff's Request for Production of Documents are, again, nothing more than boilerplate and are stricken, except with regard to any legitimate privilege objections for which a privilege log is

-31-

submitted along with discovery responses."); <u>Hy-Ko Prods. Co. v.</u>
<u>Hillman Group, Inc.</u>, No. 5:09MC32, 2009 WL 3258603, at *2 (E.D.N.C.
Oct. 8, 2009) (unpublished) ("In the usual instance, objections to
discovery which simply recite stock phrases are not colorable.
Generally, the mere cry of burdensomeness or irrelevance without
any statement in support of these objections is disfavored by the
court." (internal citation omitted)); <u>Mills v. East Gulf</u>
<u>Preparation Co.</u>, 259 F.R.D. 118, 132 (S.D.W. Va. 2009) ("Objections
to Rule 34 requests must be stated specifically, and boilerplate
objections regurgitating words and phrases from Rule 26 are
completely unacceptable."); <u>Cappetta v. GC Servs. Ltd. P'ship</u>, No.
3:08CV288, 2008 WL 5377934, at *3 (E.D. Va. Dec. 24, 2008)
(unpublished) ("Just as with relevance objections, merely stating
that a discovery request is 'overbroad' or 'unduly burdensome'
will not suffice to state a proper objection."); <u>Mancia v.</u>
<u>Mayflower Textile Servs. Co.</u>, 253 F.R.D. 354, 364 (D. Md. 2008)
("[B]oilerplate objections that a request for discovery is
'overbroad and unduly burdensome, and not reasonably calculated to
lead to the discovery of material admissible in evidence' . . . are
improper unless based on particularized facts." (internal citation
omitted)); <u>Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.,</u>
<u>Inc.</u>, 246 F.R.D. 522, 528 (S.D.W. Va. 2007) ("There is abundant
caselaw to the effect that boilerplate objections to Rule 34
document requests are inapproriate."); <u>Sabol v. Brooks</u>, 469 F.
Supp. 2d 324, 329 (D. Md. 2006) ("[The non-party served with a
subpoena containing document requests] did not particularize its

-32-

objections to these requests, and instead used the boilerplate objections that this Court repeatedly has warned against, thereby waiving its objections."); <u>PLX, Inc. v. Prosystems, Inc.</u>, 220 F.R.D. 291, 293 (N.D.W. Va. 2004) ("The mere recitation of the familiar litany that an interrogatory or document production request is overly broad, burdensome, oppressive and irrelevant will not suffice." (internal quotation marks omitted)).[22]

### 3. The Obligations of Counsel during Discovery

By Local Rule, this Court has directed "counsel <u>to conduct discovery in good faith and to cooperate</u> and be courteous <u>with each other in all phases of the discovery process</u>." M.D.N.C. R. 26.1(b)(1) (emphasis added). Moreover, the Rules mandate that:

> [E]very discovery request, response, or objection must be signed by at least one attorney of record . . . or by the party personally, if unrepresented . . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a <u>reasonable inquiry</u> . . . a discovery request, response, or objection [is] . . . (i) <u>consistent with these rules and warranted by existing law or by a nonfrivolous</u>

---

[22] Although it does not appear that the Fourth Circuit has addressed this issue, the foregoing rulings cohere with the decisions of other circuit courts. <u>See, e.g.</u>, <u>McLeod, Alexander, Powel & Apffel, P.C. v. Quarles</u>, 894 F.2d 1482, 1485 (5th Cir. 1990) (citing opinions from Third and Eleventh Circuits in affirming district court's ruling that mere invocation of words "overly broad, burdensome, and oppressive" did not constitute valid objections to discovery requests). The undersigned Magistrate Judge finds the above-cited authority persuasive for a number of reasons, including because "[t]he failure to particularize these objections as required leads to one of two conclusions: either [those who relied upon mere boilerplate] lacked a factual basis to make the objections that they did, which would violate Rule 26(g), or they complied with Rule 26(g), made a reasonable inquiry before answering and discovered facts that would support a legitimate objection, but they were waived for failure to specify them as required. Neither alternative helps [their] position, and either would justify a ruling requiring that the [persons in question] provide the requested discovery regardless of cost or burden, because proper grounds for objecting have not been established." <u>Mancia</u>, 253 F.R.D. at 364.

<u>argument for extending, modifying, or reversing existing law, or for establishing new law</u>; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither <u>unreasonable</u> nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B) (emphasis added).

"Rule 26(g) imposes an <u>affirmative obligation</u> to engage in pretrial discovery in a <u>responsible</u> manner that is <u>consistent with the spirit and purposes of Rules 26 through 37</u>." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g) (emphasis added). "[T]he spirit of the [R]ules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . ." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. <u>See also Mills</u>, 259 F.R.D. at 130 ("The civil discovery process is to be engaged in cooperatively."); <u>Wagner v. St. Paul Fire & Marine Ins. Co.</u>, 238 F.R.D. 418, 422 (N.D.W. Va. 2006) ("Gamesmanship to evade answering [discovery requests] is not allowed.").[23]

---

[23] For example, "[i]t is clear under the text and spirit of the discovery rules that the existence of a discovery dispute as to one matter is not ground to delay or withhold the taking of other discovery." <u>Jayne H. Lee, Inc.</u>, 173 F.R.D. at 657. "If plaintiff's counsel believes that . . . the defendant is otherwise withholding requested discovery, his remedy is to file a Motion to Compel under Rule 37. He may not retaliate and hold his client's . . . responsive documents hostage." <u>Id.</u> <u>See also id.</u> at 656 (describing attorney's "unilateral[] deci[sion] to hold [opposing party's] discovery responses hostage until [attorney] obtained discovery responses that met his satisfaction . . . [as] a flagrant violation of both the letter and spirit of the Federal Rules of [Civil] Procedure").

-34-

The certification requirement in Rule 26(g) thus "obliges each attorney _to stop and think_ about the legitimacy of a discovery request, a response thereto, or an objection." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g) (emphasis added). _See also_ _id._ ("The signing requirement means that every discovery request, response, or objection should be grounded on a theory that is reasonable under the precedents or a good faith belief as to what should be the law.").[24] Moreover, Rule 26(g) "requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." _Id._ By signing a Rule 26(g) certification, an attorney "certifies that [he or she] has made a _reasonable effort_ to assure that the client has provided _all_ the information and _documents available_ to [the client] that are _responsive to the discovery demand_." _Id._ (emphasis added). _See also_ Fed. R. Civ. P. 37 advisory committee's notes, 1993 Amendments, Subdivision (a) ("[Discovery requests] should not be read or interpreted in an artificially restrictive or hypertechnical manner to avoid disclosure of information fairly covered by the discovery request, and to do so is subject to appropriate sanctions under [Rule 37(a)].").

"If a certification violates this rule without substantial justification, the court, on motion or on its own, _must impose an_ _appropriate sanction_ on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to

---

[24] "The term 'response' includes . . . responses to production requests." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g).

pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3) (emphasis added). This provision "mandates that sanctions be imposed on attorneys who fail to meet the standards established in the first portion of Rule 26(g)." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g). See also id. ("Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."); M.D.N.C. R. 83.4 (providing that, "[i]f an attorney or a party fails to comply with a local rule of this court, the court may impose sanctions against the attorney or party, or both" and authorizing litigation-based and monetary sanctions).

### 4. The Procedure for Motions to Compel

Despite the unambiguous dictates of the Rules (including Rule 26(g)) and related local rules (like this Court's Local Rule 26.1(b)(1)) that require attorneys to conduct discovery in a cooperative fashion, courts continue to find that "[h]ardball discovery . . . is still a problem in some cases . . . ." Network Computing Servs. Corp. v. Cisco Sys., Inc., 223 F.R.D. 392, 395 (D.S.C. 2004) (noting that such conduct "is costly to our system and consumes an inordinate amount of judicial resources"). See also Frontier-Kemper, 246 F.R.D. at 530 ("[T]his court encounters discovery disputes involving boilerplate and other inappropriate objections far too frequently."); Jayne H. Lee, Inc., 173 F.R.D. at 656 ("As with interrogatories, answers to requests for production of documents are also subject to frequent abuse during pretrial discovery."). Accordingly, although the Rules provide that the

-36-

"primary responsibility for conducting discovery . . . rest[s] with the litigants, [who are] obliged to act responsibly and avoid abuse," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g), the Rules also "acknowledge[] the reality that [the discovery process] cannot always operate on a self-regulating basis," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (b).

The Rules thus afford a number of mechanisms for litigants to seek judicial intervention in discovery disputes, including authorizing "[a] party seeking discovery [to] move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . a party fails to respond that inspection will be permitted . . . <u>as requested</u> under Rule 34." Fed. R. Civ. P. 37(a)(3)(B) (emphasis added). <u>Accord</u> Fed. R. Civ. P. 45(c)(2)(B) ("If an objection [to production of documents] is made . . . the serving party may move the issuing court for an order compelling production or inspection."). A motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). <u>See also</u> M.D.N.C. R. 37.1(a) ("The court will not consider motions and objections relating to discovery unless moving counsel files a certificate that after personal consultation and diligent attempts to resolve differences the parties are unable to reach an accord. . . . [A]t any party's request, the conference may be held by telephone.").

Over the course of more than four decades, district judges and magistrate judges in the Fourth Circuit (including members of this Court) have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion. See, e.g., Wagner, 238 F.R.D. at 424-25 (citing with approval another court's observation that "courts have long held that the burden is on the objecting party to show why an interrogatory is improper and while the burden is on the moving party to seek court action, the burden of persuasion remains at all times with the objecting party" (internal quotation marks omitted)); United Oil Co., Inc. v. Parts Assocs., Inc., 227 F.R.D. 404, 411 (D. Md. 2005) ("Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules. This includes, of course, where the resisting party asserts that the discovery is irrelevant."); Elkins, 2004 WL 3249257, at *2 (Dixon, M.J.) ("It is the rule in federal court that the burden is on the party resisting discovery on relevancy grounds to support his objection; it is not the party's burden propounding discovery, at least in the first instance, to show relevancy."); Spell v. McDaniel, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984) ("[T]he burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery."); Flora, 81 F.R.D. at 578 (Gordon, C.J.) ("[T]he burden of showing that the requested discovery is not relevant to the issues in the case is on

-38-

the party resisting discovery."); Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D.W. Va. 1970) ("The burden is upon the objecting party to show that her objections to the interrogatories should be sustained."); Pressley v. Boehlke, 33 F.R.D. 316, 318 (W.D.N.C. 1963) ("[T]he burden is on defendant to show his objections to interrogatories should be sustained.").

In addition to establishing a process for judicial resolution of discovery disputes, "Rule 37 provides generally for sanctions against parties or persons unjustifiably resisting discovery." Fed. R. Civ. P. 37 advisory committee's notes, 1970 Amendment. More specifically:

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

Conversely, because "'[t]he great operative principle of [Rule 37] is that the loser pays,'" Biovail Corp. v. Mylan Lab., Inc., 217 F.R.D. 380, 382 (N.D.W. Va. 2003) (quoting Rickels v. City of

-39-

<u>South Bend</u>, 33 F.3d 785, 786 (7th Cir. 1994)), it further directs that:

> If the motion [to compel] is denied, the court may issue any protective order authorized under Rule 26(c) and <u>must</u>, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to <u>pay the party</u> or deponent who <u>opposed the motion its reasonable expenses</u> incurred in opposing the motion, including attorney's fees.  But the court must <u>not</u> order this payment <u>if</u> the motion was <u>substantially justified</u> or other circumstances make an award of expenses <u>unjust</u>.

Fed. R. Civ. P. 37(a)(5)(B) (emphasis added).[25]  <u>See also</u> Fed. R. Civ. P. 37(d)(1)(A)(ii) ("The court . . . may, on motion, order sanctions if . . . a party, after being properly served with . . . a request for inspection under Rule 34, fails to serve its answers, objections, or written response.").

### B.  Analysis of ConvaTec's Motion to Compel

#### 1.  Plaintiffs' Procedural Arguments

As an initial matter, because Plaintiffs argue that, before filing this motion, ConvaTec "[r]efused to wait for a meaningful meet and confer" (Docket Entry 64 at 7), the Court considers ConvaTec's compliance with the consultation requirements of Rule 37(a)(1) and Local Rule 37.1(a), <u>see</u> Discussion, <u>supra</u>, p. 37.  In this regard, the Court notes first that the record before it generally reflects that Defendants' counsel diligently sought the cooperation of Plaintiffs' counsel to obtain documents responsive to Defendants' First Set of Document Requests, including by

---

[25] "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C).

instigating numerous conferences and by sending detailed communications outlining alleged shortcomings in Plaintiffs' responses. See Background, supra, pp. 6, 8-9, 10, 11-13, 15-18, 20, 21. Conversely, the record before the Court indicates that Plaintiffs' counsel at times failed to promptly respond or, in some cases, to respond at all to Defendants' counsel's inquiries about document production. See id. at 8, 12-13, 18, 20-21.

For example, on October 2, 2009, Defendants' counsel e-mailed Plaintiffs' counsel a lengthy letter describing remaining areas of disagreement as to Defendants' original document request (served more than five months earlier). See id. at 15-18. At the letter's end, Defendants' counsel solicited a "final meet and confer on or before October 7, 2009," (Docket Entry 57 at Ex. 24, p. 2); however, it seems Plaintiffs' counsel never responded (id. at 15).[26] Similarly, on October 16, 2009, Defendants' counsel sought (by e-mail) a conference with Plaintiffs' counsel on October 19, 2009, to discuss Plaintiffs' objections to the Zamierowski subpoena, see Background, supra, p. 20; however, Plaintiffs' counsel failed to respond, despite the fact that, during the intervening time, Plaintiffs' counsel served Defendants' counsel with objections to the Piper subpoena, see id.[27] On October 20, 2009, Defendants'

---

[26] As noted above, in a later exchange with Defendants' counsel, Plaintiffs' counsel claimed that they had no record of the October 2 letter. See Background, supra, p. 23. Plaintiffs have not made that claim in court filings.

[27] Those objections bear the signature of R. Laurence Macon, see Background, supra, n.16; this fact undercuts Mr. Macon's later excuse that Defendants' counsel received no response to the October 16 e-mail because Mr.
(continued...)

counsel again requested a conference and explained the need for urgent action (i.e., the looming close of fact discovery), but Plaintiffs' counsel would not agree to meet for another week (citing litigation obligations of two of Plaintiffs' eight attorneys of record without explaining why the other six lacked the ability to confer). See id. at 21. Defendants' counsel then made a final request for a conference during the evening (after lead Plaintiffs' counsel's out-of-state depositions broke for the day), but Plaintiffs' counsel did not respond. See id.

In light of all these circumstances, the Court does not find that ConvaTec failed to comply with the consultation requirements of Rule 37 and Local Rule 37.1, before it filed the instant motion.[28] Even if one focused only on the final sequence of events (which the Court deems too limited a perspective), Defendants' counsel began seeking a meeting on October 16, 2009, and waited until October 22, 2009, to move to compel. That six-day window afforded Plaintiffs a sufficient opportunity to engage on these

---

[27](...continued)
Macon and another of Plaintiffs' eight attorneys of record were out of state dealing with another matter (see Docket Entry 57 at Ex. 27, p. 2). Further, "[t]here is no reason given as to why [another attorney of record] could not respond to [opposing counsel]." Tustin v. Motorists Mut. Ins. Co., No. 5:08CV111, 2009 WL 3335060 (N.D.W. Va. Oct. 14, 2009) (unpublished).

[28] Given the fact-specific nature of inquiries of this sort, comparisons to other decisions have limited utility. That said, Defendants' counsel's consultative efforts appear to compare favorably to the conduct of other litigants that courts have found adequate. See, e.g., Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 193, 197-98 (N.D.W. Va. 2000) (finding submission of letter detailing disputed issues sufficient to meet Rule 37's consultation requirement). Further, since the filing of this motion, the parties met, but disputes remained. See Background, supra, pp. 23-24. This fact supports the view that "any telephone call or in person meeting would not likely have been successful in resolving this discovery dispute," Kidwiler, 192 F.R.D. at 198.

-42-

issues, particularly given Defendants' legitimate concern about the impending discovery deadline and the fact that Plaintiffs had numerous other counsel of record (in addition to the two attorneys who had other work commitments). See Tustin v. Motorists Mut. Ins. Co., No. 5:08CV111, 2009 WL 3335060 (N.D.W. Va. Oct. 14, 2009) (unpublished) (rejecting notion that scheduling conflicts of one attorney of record justified failure to respond to consultation request where party had other counsel); Miller v. Pruneda, 236 F.R.D. 277, 282 (N.D.W. Va. 2004) (holding that "[s]even days is a reasonable amount of time to wait for a response to an attempt to confer" in ruling that movant "made a good faith effort" sufficient to warrant adjudication of motion to compel "on its merits").

The Court also rejects Plaintiffs' argument that ConvaTec "premature[ly]" filed the instant motion because, at the time, "[f]act discovery [wa]s ongoing" and "Plaintiffs will supplement their production according to the Rules of Civil Procedure." (Docket Entry 64 at 2.) Plaintiffs have cited no authority for this proposition. Neither the Rules nor this Court's Local Rules require a party to defer seeking relief for an opposing party's failure to comply with discovery until discovery ends. See Fed. R. Civ. P. 37; M.D.N.C. R. 37.1. Similarly, the Joint Stipulated Scheduling Order did not direct the parties to file a motion to compel only after the close of fact discovery. (See Docket Entry 37.) Nor would such a requirement make sense; litigants reasonably might wish to file a motion to compel prior to the expiration of

-43-

any discovery period in order to obtain the requested information in time to use it in shaping the conduct of other discovery.[29]

"Furthermore, the promise to continue to search for records and supplement [one's] responses in the future, is a completely inadequate response to a long standing discovery request . . . ." Aerodyne Sys. Eng'g, Ltd. v. Heritage Int'l Bank, 115 F.R.D. 281, 284-85 (D. Md. 1987). To the extent Plaintiffs base their "prematurity" argument on the notion that "ConvaTec is complaining that Plaintiffs have not produced documents according to a time table ConvaTec unilaterally imposed" (Docket Entry 64 at 2), they fail to persuade. As set out above, the Rules authorize a requester to specify the deadline for document production and permit the responder to seek relief from unreasonably short response times. See Discussion, supra, pp. 29-30. In many cases, if the responder proposes an alternative to the requester's specified production time, the two sides can reach common ground "'and the discovery will be had without court intervention.'" Jayne H. Lee, Inc., 173 F.R.D. at 655 (quoting 8A Charles A. Wright et al., Federal Practice and Procedure § 2213 (2d ed. 1994)).

Often problems arise, however, because:

[A]ttorneys comply with half of what Rule 34(b) requires – they file a written response, but they do not agree to

---

[29] Indeed, some courts require the filing of motions to compel within 30 days of the allegedly inadequate response. See, e.g., D. Md. L. Admin. R. 104(8)(a) ("If a party who has propounded interrogatories or requests for production is dissatisfied with the response to them and has been unable to resolve informally (by oral or written communications) any disputes with the responding party, that party shall serve a motion to compel within thirty (30) days of the party's receipt of the response.").

the requested time, place and manner of production, or
. . . propose a reasonable alternative method. Rather,
they give the vague assurance that the requested
documents will be produced [at an unspecified future
time]. This practice assures continued wrangling and
negotiating before the documents ultimately are produced
. . . [and] frequently derails the discovery process,
because parties often wait to schedule depositions until
after document production has occurred.

Id. Something akin to that phenomena seems to have occurred in

this case. See Background, supra, pp. 3-18. Notably, when the

"wrangling and negotiating" began, Defendants did not immediately

move to compel due to Plaintiffs' failure to produce all the

requested documents by the date Defendants had specified; instead,

initially Defendants simply pressed Plaintiffs for a more definite

statement about when Plaintiffs would complete production and, only

after several months passed, began insisting on final completion of

all production. See id. 6, 8-10, 11-13, 15-18.[30]

On the record before it, the Court finds nothing unreasonable

about Defendants' actions in this regard. More importantly,

however, if Plaintiffs believed that Defendants sought to impose an

unreasonable "time table" for production of documents, "the proper

response by [Plaintiffs] would have been to [make] its incomplete

[production] and move to enlarge the time for [serving] its

complete [production], with an estimate of how much time would be

_____

[30] One magistrate judge in this Circuit has entertained a motion to compel
over the responding party's argument that such motion was "premature," where the
movant sought judicial intervention as soon as the responding party served its
boilerplate objections and prior to service of responsive documents. Barb, 2010
WL 446638, at *1 ("Although there may be certain circumstances in which it may
be prudent for counsel to wait until discovery responses are provided, in this
case, . . . plaintiff was justified in bringing the motion at this time.").

-45-

needed." <u>Association of American Physicians and Surgeons, Inc. v. Clinton</u>, 837 F. Supp. 454, 457 (D.D.C. 1993). <u>See also</u> <u>Aerodyne Sys.</u>, 115 F.R.D. at 289-90 (condemning party for "fail[ing] for over six months to respond adequately and in a timely fashion to [opposing party's] interrogatories and requests for production of documents" without "seek[ing] an extension of time within which to comply . . . [or] a protective order regarding the discovery requests"). "Instead, [Plaintiffs] decided [they] would [make] an incomplete [production] and then supplement it whenever [they] pleased . . . ." <u>Association of American Physicians</u>, 837 F. Supp. at 457. It thus appears Plaintiffs, not Defendants, sought to unilaterally dictate the time table as to this matter and that Defendants responded reasonably to that situation by filing the instant motion in due course, not prematurely. The Court therefore will address the merits of Defendants' Motion to Compel.

2. The Merits of ConvaTec's Motion to Compel

As detailed above, in response to both Defendants' First Set of Document Requests and the Zamierowski and Piper subpoenas, Plaintiffs asserted a variety of boilerplate objections. <u>See</u> Background, <u>supra</u>, pp. 4-5, 19-20. In light of the authority previously discussed, <u>see</u> Discussion, <u>supra</u>, pp. 31-33, objections of this sort do not suffice. By failing to present valid objections to these discovery requests, Plaintiffs "waived any legitimate objection [they] may have had." <u>Mancia</u>, 253 F.R.D. at 364. <u>Accord</u> <u>Frontier-Kemper</u>, 246 F.R.D. at 528-29 (discussing authority for proposition that plaintiff waived objections by

-46-

relying on mere boilerplate in responding to document requests); Sabol, 469 F. Supp. 2d at 329 ("[The non-party served with a subpoena containing document requests] did not particularize its objections to these requests, and instead used the boilerplate objections that this Court repeatedly has warned against, thereby waiving its objections."). Cf. Phillips v. Dallas Carriers Corp., 133 F.R.D. 475, 477 (M.D.N.C. 1990) ("It is well settled that the failure to make a timely objection in response to a Rule 34 request results in waiver . . . ." (internal citations omitted)).

An additional ground exists for finding that Plaintiffs waived any objections to Defendants' First Set of Document Requests. Specifically, instead of responding that they would or would not provide documents "as requested" (as to the time for production) or "offering a specific time" as an alternative, Plaintiffs stated an intention to make some production at an unspecified date of its own choosing. See Background, supra, p. 4. Such a response "is not a complete answer as required by Rule 34(b) and, therefore, pursuant to Rule 37(a)(3) is treated as a failure to answer or respond." Jayne H. Lee, Inc., 173 F.R.D. at 656.

Because, however, ConvaTec has not raised these waiver arguments in pressing its instant Motion to Compel, the Court will examine each disputed matter regarding Plaintiffs' production of

-47-

documents in response to Defendants' First Set of Document Requests, as well as the Zamierowski and Piper subpoenas.[31]

### a. Defendants' Document Requests 18, 19 and 36

ConvaTec has moved to compel Plaintiffs to produce documents regarding Dr. Zamierowski as solicited by Document Requests 18, 19 and 36 from Defendants' First Set of Document Requests. (Docket Entry 57 at 9.) Request 18 seeks communications with Dr. Zamierowski about the '880 patent, or any patent application "claiming priority to US Appln 332,699, including but not limited to WO 90/11795, or concerning wound drainage involving suction or wound healing involving suction." (Docket Entry 57 at Ex. 1, p. 9.) Request 19 seeks agreements with Dr. Zamierowski or others concerning the same issues in Request 18, as well as records of any related payments, royalties, or other transfer of rights. (Id.) Request 36 asks for "[a]ll documents produced by Plaintiffs in all Related Litigations." (Id. at Ex. 1, p. 12.)

In their response to the instant Motion to Compel, Plaintiffs asserted that they "have produced all relevant, non-privileged documents concerning Dr. Zamierowski's prior art patents." (Docket

_____

[31] Based on the parties' filings regarding the instant motion, the Court cannot discern where the parties stand as to resolution of privilege issues. As noted above, when the recipient of a discovery request withholds otherwise responsive documents based on a claim of privilege, that person or entity must disclose that fact through a proper privilege log. See Discussion, supra, p. 31. The only reference to these matters the Court has located in the parties' instant filings appears in Plaintiffs' Sur-Reply, which states: "Defendants and Plaintiffs have not reached an agreement on a privilege log. To the extent an agreement is reached, these privileged documents will be identified on the log." (Docket Entry 73 at 7.) In the absence of any other information, the Court does not construe ConvaTec's instant motion as seeking to compel document production based on an allegation that Plaintiffs have improperly claimed privileges.

-48-

Entry 64 at 3 (emphasis added).)   Plaintiffs further noted that they objected to the document requests at issue "because the requests are overly broad, unduly burdensome and seek information that is not relevant to the case nor reasonably calculated to lead to such information[, as well as] . . . on the grounds that the requested documents are protected by the attorney-client-privilege, the work product doctrine, the investigative privilege and other applicable privileges."   (Id.)   To support their claim of satisfactory production as to these matters, Plaintiffs allege that, "[s]ubject to [their] objections," they produced the following:   "references to Dr. Zamierowski's patents within the previously produced file wrappers and reexamination files, as well as agreements with and payments from KCI, [and] over 14,000 pages of relevant, non-privileged materials from Dr. Zamierowski [that] were produced on October 30, 2009 at bates numbers ZAM00000001 - ZAM00014102."   (Id. (emphasis added).)   According to Plaintiffs, "there are no separate documents that concern the 'Zam patch' apart from the materials that have been produced."   (Id. at 4.)

By appending the adjective "relevant" as a qualifier to their otherwise sweeping declaration of compliance with Defendants' requests and by reiterating that they produced documents "subject to" certain objections, Plaintiffs' foregoing response confuses more than it clarifies.   As another court has observed:

> This type of answer hides the ball.   It leaves the [opposing party] wondering . . . what documents are being withheld.   Furthermore, it permits the defendant to be the sole arbiter of that decision.   Such an objection is really no objection at all as it does not address why

-49-

> potentially responsive documents are being withheld.
> [The responding party], having no incentive to err on the
> side of disclosure, has arrogated to itself the authority
> to decide questions of relevance which is unquestionably
> the decision of the judge.

Athridge v. Aetna Casualty and Surety Co., 184 F.R.D. 181, 190

(D.D.C. 1998). See also id. (opining that party's statement

regarding production of "'relevant, non-privileged' documents

'subject to and without waiving' [its] objection[s], serves only to

obscure potentially discoverable information and provides no

mechanism for either plaintiffs or the Court to review defendant's

decisions" (internal brackets omitted)). Accord Fresenius Med.

Care Holding Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644, 656 (N.D.

Cal. 2004) ("[The defendant] responds [to the plaintiff's motion to

compel by asserting] that it 'is not withholding any non-

privileged, relevant responsive documents' . . ., [however,] [the

defendants'] assertion that it is not withholding any non-

privileged documents is clearly limited by its unilateral

designation of relevance. . . . [The defendant] must produce all

non-privileged responsive documents . . . ."); Mercer v. Allegheny

Ludlum Corp., 125 F.R.D. 43, 46 (S.D.N.Y. 1989) ("[Non-party]

Goldman Sachs, through its counsel, answers [plaintiffs' motion to

enforce a subpoena requesting documents] in essence that counsel

have looked at the Goldman Sachs files; that they have given to

plaintiffs' counsel everything relevant to the issues; and that

plaintiffs must be content with that declaration. . . . [T]his is

not sufficient. . . . Plaintiffs are not, in my judgment, required

to accept the disclaimer of non-relevance from Goldman Sachs or its

-50-

counsel in respect of documents which to date they have not been permitted to inspect.").[32]

Further, as the party opposing the motion to compel, Plaintiffs have the burden of persuading the Court that grounds exist to withhold any documents responsive to the requests at issue. See Discussion, supra, pp. 38-39. Plaintiffs' response to the instant motion offers no argument (let alone supporting documentation) for any of the objections as to which they claimed their document production remained "subject" (i.e., overbreadth, burdensomeness, and relevance). (See Docket Entry 64 at 3-4.)

In their Sur-Reply, Plaintiffs belatedly asserted that they "have explained to Defendants, including ConvaTec, numerous times what the burden is in producing all communications with Dr. Zamierowski – the volume of documents acquired during a 15 year business relationship." (Docket Entry 73 at 4.) Even if the Court were to consider this tardy attempt to show burdensomeness (which it deems procedurally inappropriate[33]), the Court would find this

_____

[32] The Court also notes that the documents Plaintiffs produced on October 30, 2009, appear to come directly from Dr. Zamierowski in response to the subpoena Defendants directed to him (through Plaintiffs), not from Plaintiffs' own files as Defendants had requested in their First Set of Document Requests. (See Docket Entry 64 at 3 (stating that materials were "from Dr. Zamierowski").) Because Plaintiffs' knowledge of matters related to Dr. Zamierowski's prior work constitutes a relevant issue in the case, the Court agrees with ConvaTec that "Dr. Zamierowski's production cannot, of course, satisfy Plaintiffs' obligations" to produce documents requested of them (Docket Entry 65 at 6 n.4).

[33] As indicated previously, the Court will grant Plaintiffs' request for leave to file the Sur-Reply to afford Plaintiffs an opportunity to give their account of the significance of the parties' conference on November 17, 2009, see Background, supra, n.18, not to present arguments they could and should have made in their response to the instant motion.

one-line statement in a brief (which fails to allege, much less establish, that the requested production would cost a substantial amount of money or pose real logistical difficulties) insufficient. See Alberts v. Wheeling Jesuit Univ., No. 5:09CV109, 2010 WL 1539852, at *8 (N.D.W. Va. Apr. 19, 2010) (unpublished) (ruling that party resisting discovery must show how requested discovery "was overly broad, burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"); Hy-Ko Prods., 2009 WL 3258603, at *2 (describing non-party's argument in brief supporting its motion to quash subpoena for documents that "requests required [it] to produce thousands of documents from its enterprise and that responding to the subpoena would require an enormous allocation of resources, could take several months, and involve several hundred employees" as "minor substantive showing on the issue of undue burden" and noting that "assertions in this form are disfavored"); Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) (quoting with approval 9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.51[4] (3d ed. 2009), for proposition that "[a] party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request"); In re Urethane Antitrust Litig., 261 F.R.D. 570, 575-76 (D. Kan. 2009) ("A party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request. Defendants have

-52-

provided only conclusory allegations and have not offered any detailed explanation, affidavit, or other evidence demonstrating that they will suffer undue burden and expense by complying with the discovery." (internal footnote omitted)); Athridge, 184 F.R.D. at 191 (same); Stout v. Wolff Shoe Co., No. 3:04CV23231JFA, 2007 WL 1034998, at *2 (D.S.C. Mar. 31, 2007) (unpublished) ("A party's failure to produce relevant discovery is not excused because the volume of records to be searched is vast . . . .").

As a final matter, the fact that, according to Plaintiffs, "[o]n November 30, 2009, [they] produced over 1,200 pages of communications between Plaintiffs and Dr. Zamierowski" (assertedly from Plaintiffs' own files) (Docket Entry 73 at 4 and Ex. G), does not alter the Court's foregoing analysis. In their Sur-Reply trumpeting this untimely document production, Plaintiffs again hedge in such a manner that the Court cannot tell if they have made a complete production or not, in that they state: "Plaintiffs still maintain their objections to ConvaTec's document requests but have produced these documents in an attempt to avoid further, unnecessary demands on the Court." (Id. (emphasis added).)

In sum, as to Requests 18, 19 and 36 from Defendants' First Set of Document Requests, Plaintiffs have not carried their burden of showing the existence of grounds to resist the requested discovery.[34] Moreover, due to Plaintiffs' pattern of apparently

---

[34] Because Plaintiffs have made no showing as to the alleged lack of relevance of the material in question, the Court will not discuss the relevance issue at any length. The Court, however, does note that ConvaTec has presented
(continued...)

calculated ambiguity, the Court cannot tell what, if any, otherwise responsive documents Plaintiffs have withheld based on overbreadth, burdensomeness, and relevance grounds. As a result, the Court will grant ConvaTec's Motion to Compel as to these matters. Within seven days of the date of this Memorandum Opinion and Order, Plaintiffs shall produce <u>all</u> documents responsive to Requests 18, 19 and 36, with the <u>sole</u> exception of documents as to which Plaintiffs have a good faith basis for claiming a privilege as reflected in a proper privilege log disclosed to ConvaTec within the same seven-day period (unless Plaintiffs already have provided ConvaTec such a privilege log, <u>see</u> Discussion, <u>supra</u>, n.31).

<u>b. Defendants' Document Requests 1-4, 7, 10 and 17</u>

Requests 1-4, 7, 10 and 17 of Defendants' First Set of Document Requests concern: (i) the research and development work related to the patents (<u>id.</u> at Ex. 1, p. 4); (ii) the inventors' descriptions or discussions of the patents or wound drainage or healing using suction (<u>id.</u> at Ex. 1, p. 5); (iii) specific publication submissions referenced in a particular article (<u>id.</u>); (iv) documents related to specific presentations (<u>id.</u>); (v) "patents and/or patent applications, and any drafts thereof, which name [Drs. Morykwas and/or Argenta] as inventors or co-inventors, and concern wound drainage involving suction or wound healing involving suction, including but not limited to all patents or patent applications related to any of the patents-in-suit" (<u>id.</u> at

---

[34](...continued)
a cogent explanation regarding the relevance of these items. (<u>See</u> Docket Entry 57 at 9-10.)

Ex. 1, p. 6); (vi) documents regarding two specific claims from the prosecution of the '081 patent (id. at Ex. 1, p. 7); and (vii) documents regarding the use of wound drainage or healing using suction prior to November 14, 1991 (id. at Ex. 1, p. 8).

In its Motion to Compel, ConvaTec identifies two specific types of documents that it contends fall within the above-cited requests, but as to which Plaintiffs have made an inadequate production: 1) the inventors' work papers; and 2) patient records related to any research. (Docket Entry 57 at 11.) As to the latter category, it appears that Plaintiffs have not produced the records in question because of a need to secure a protective order to address the privacy rights of the patients in question. (See Docket Entry 73 at 5-6.) After all of the briefing regarding the instant motion, the parties agreed to an appropriate protective order as to the patient records, which the Court entered. (See Docket Entries 97 and 102.) The Court has no information as to whether or not Plaintiffs have carried through on their previously stated commitment that "these records will be made available for production once a protective order is in place" (Docket Entry 73 at 6). Accordingly, the Court will defer any ruling on this aspect of ConvaTec's instant Motion to Compel pending an update from the parties about whether this matter remains ripe or has become moot.

As to the inventors' work papers, ConvaTec asserts that "Plaintiffs have produced many documents in unidentifiable form, including loose and scattered notebook pages. ConvaTec seeks a comprehensible production, such that the work by the inventors, or

-55-

the lack of it, can be determined." (Docket Entry 57 at 11 (internal footnote omitted).)[35] The Court has reviewed the production in question (Docket Entry 57 at Ex. 29) and agrees with ConvaTec's characterization of it.

In responding to this aspect of ConvaTec's instant motion, Plaintiffs focus on the fact of their production of documents, not the manner. (Docket Entry 64 at 4-5.)[36] Further, the parties' meeting on November 17, 2009, resulted in more, not less confusion about whether all the inventors' "laboratory notebooks" had been produced. (Compare Docket Entry 65 at 7 with Docket Entry 73 at 5.) The Court therefore will order Plaintiffs to make available for inspection to ConvaTec's counsel the original versions of all documents in Exhibit 29 to ConvaTec's Memorandum in Support of its Motion to Compel (Docket Entry 57) and of any and all "laboratory notebooks" (or similar materials by whatever name known) in the manner and form that the inventors maintained them. Plaintiffs also shall make such further copies of such materials as ConvaTec's counsel reasonably may request in connection with the ordered inspection. Counsel shall work cooperatively to carry out the foregoing inspection, including as to any privilege issues that may exist; any failure to fulfill that duty, including by causing any

---

[35] As early as August 27, 2009, Defendants' counsel brought this issue to Plaintiffs' attention. See Background, supra, n.8.

[36] Plaintiffs also continued their practice of describing their production as made "subject" to various conclusory objections (Docket Entry 64 at 4-5), such that the Court lacks any sense of whether and with what justification Plaintiffs have withheld otherwise responsive documents. See Discussion, supra, pp. 48-51.

undue delay, shall constitute grounds for sanctions under Rule 37(b)(2)(A) and (C) and Local Rules 26.1(b)(1) and 83.4.

<u>c. Defendants' Document Request 25</u>

Request 25 of Defendants' First Set of Document Requests asks Plaintiffs to produce "[a]ll documents concerning any notes, memoranda, reports, communications, discussions, meetings or other correspondence of any kind with Boehringer, including all meeting notes or minutes." (Docket Entry 57, Ex. 1 at 10.) In their response to the instant Motion to Compel, Plaintiffs asserted that they "produced all <u>relevant</u>, non-privileged documents concerning the 2007 meeting(s) with Defendants Boehringer." (Docket Entry 64 at 5 (emphasis added) (citing production, based on bates-stamping, of approximately 135 pages of documents).) Plaintiffs' response does not clarify what, if any, otherwise responsive documents Plaintiffs withheld based on their own unilateral "relevance" determinations. (<u>See</u> <u>id.</u>) For reasons previously discussed, Plaintiffs' decision to respond in this fashion impedes the discovery litigation process. <u>See</u> Discussion, <u>supra</u>, pp. 49-51.

This subject apparently came up at the parties' conference on November 17, 2009 (the day after Plaintiffs filed their above-cited response), because, immediately thereafter, in a letter to Defendants' counsel, "Plaintiffs stipulate[d] that they are only withholding privileged documents regarding Plaintiffs' meetings with Boehringer." (Docket Entry 65 at Ex. 31, p. 1.) Given the significant distinction between the two statements that Plaintiffs made about their production one day apart, ConvaTec understandably

-57-

remains skeptical of Plaintiffs' "assert[ion] that the few pages of scheduling emails and one page of handwritten notes is the entirety of [Plaintiffs'] non-privileged documents concerning their 2007 meetings with Defendant Boehringer, in which Boehringer discussed its previously launched Engenex product" (Docket Entry 65 at 8).[37]

Another court has well-described the dilemma before the Court as follows:

> [T]o the extent Plaintiffs allege that [Defendant] has not produced all documents, the Court notes the difficulty of the decision it faces. On one hand, Plaintiffs maintain that [Defendant's] document production remains incomplete, yet on the other [Defendant] contends that it has produced all that it can produce. Admittedly, there is no way for the Court to independently verify whether [Defendant] possesses the documents Plaintiffs allege exist and whether [Defendant] has in fact produced all relevant documents . . . .

Ropak Corp. v. Plastican, Inc., No. 04C5422, 2006 WL 2385297, at *5 (N.D. Ill. Aug. 15, 2006) (unpublished) (internal citations, ellipses, and quotation marks omitted).

In resolving this conundrum, the Court adopts the position that even an informed suspicion that additional non-privileged documents exist (like that articulated by ConvaTec) cannot alone support an order compelling production of documents. See, e.g., University of Kansas v. Sinks, No. 06-2341-KHV-GLR, 2007 WL 869629, at *3 (D. Kan. Mar. 22, 2007) (unpublished) ("The Court cannot compel a party to produce documents based solely on opposing speculation and belief that responsive documents exist and that the

_____

[37] ConvaTec particularly questions the lack of documents on "any business considerations concerning those meetings and leading up to Plaintiffs' decision not to assert infringement of the patents-in-suit then." (Docket Entry 65 at 8.)

producing party is withholding them."). However, the Court also takes the view that, "[a]lthough [it] cannot order [Plaintiffs] to produce documents they do not have, [Plaintiffs'] inconsistent statements are troublesome." Wright v. Weaver, No. 4:07CV369, 2009 WL 5170218, at *3 (E.D. Tex. Dec. 18, 2009) (unpublished). Accordingly, the Court will order that, within seven days of the date of this Memorandum Opinion and Order, Plaintiffs:  1) shall provide ConvaTec with "an affidavit describing the efforts made to locate documents responsive to [this] request[]," Buchanan v. Consolidated Stores Corp., 206 F.R.D. 123, 125 (D. Md. 2002); and 2) shall serve ConvaTec with a proper privilege log regarding any documents responsive to Request 25 withheld based on a privilege claim (unless they already have done so).[38]

### d.  Defendants' Document Requests 32, 33, 38 and 39

In Requests 32, 33, 38 and 39 of Defendants' First Set of Document Requests, ConvaTec sought documents concerning Plaintiffs' allegations as to damages.  (Docket Entry 57, Ex. 1 at 11-13.)  In responding to the instant Motion to Compel, after repeating their conclusory overbreadth, burdensomeness, and relevance objections, Plaintiffs asserted that, "[s]ubject to those objections and to the extent the documents were not privileged, Plaintiffs produced over

---

[38] In their Sur-Reply, Plaintiffs stated that "Defendants and Plaintiffs have not reached an agreement on a privilege log.  To the extent an agreement is reached, these privileged documents will be identified on the log."  (Docket Entry 73 at 7.)  If they have not yet prepared a privilege log regarding the documents at issue, Plaintiffs would be well-advised to review carefully all the privilege claims they wish to assert and to promptly disclose any documents that, upon reflection, they now deem improvidently withheld.

-59-

14,900 pages of sales, marketing/promotional, competitive analyses and financial information." (Docket Entry 64 at 6 (emphasis added).) Plaintiffs did not clarify what, if any, responsive documents they withheld for alleged overbreadth, burdensomeness, or lack of relevance. (See id.)[39] For reasons previously discussed, Plaintiffs' action in this regard inhibited the orderly resolution of this discovery dispute. See Discussion, supra, pp. 49-51.

In its Reply, ConvaTec acknowledged that "Plaintiffs ha[d] recently identified nearly 15,000 pages of documents that they allege satisfy ConvaTec's Motion concerning Plaintiffs' marketing and sales documents." (Docket Entry 65 at 8.) According to ConvaTec, "[m]any of these documents were produced after ConvaTec filed its Motion." (Id.) Further, and more importantly for immediate purposes, ConvaTec correctly observed that it "cannot know whether Plaintiffs are still withholding other relevant and responsive documents . . . [because] Plaintiffs, in their response, indicate that they have only produced documents that they deem relevant." (Id.) When confronted with this clear explanation from ConvaTec as to the problem posed by Plaintiffs' continued qualification of their claims of compliance, Plaintiffs reinforced the perception that they had withheld and would continue to withhold documents that they deemed objectionable, in that they

_____

[39] As the party opposing the motion to compel, Plaintiffs have the burden of showing that grounds exist to withhold documents responsive to the requests at issue. See Discussion, supra, pp. 38-39. Plaintiffs' response to the instant motion offers no argument (let alone supporting documentation) for any of the objections as to which they claimed their document production remained "subject" (i.e., overbreadth, burdensomeness, and relevance). (See Docket Entry 64 at 6.)

stated in their Sur-Reply: "Plaintiffs informed ConvaTec in their Response and in the November 17, 2009 teleconference that Plaintiffs are not withholding any <u>relevant</u>, responsive, non-privileged documents. Under their ongoing duty to supplement production, as additional documents are uncovered, Plaintiffs' counsel are reviewing them and producing any <u>relevant</u>, non-privileged materials." (Docket Entry 73 at 7 (emphasis added).)[40]

Under these circumstances, the Court will grant ConvaTec's Motion to Compel as to these matters. Within seven days of the date of this Memorandum Opinion and Order, Plaintiffs shall produce <u>all</u> documents responsive to Requests 32, 33, 38 and 39 in Defendants' First Set of Document Requests, with the <u>sole</u> exception of documents as to which Plaintiffs have a good faith basis for claiming a privilege as reflected in a proper privilege log disclosed to ConvaTec within the same seven-day period (unless Plaintiffs already have provided ConvaTec such a privilege log, <u>see</u> Discussion, <u>supra</u>, n.31).

### e. Zamierowski and Piper Subpoena Document Requests

As detailed above, in response to ConvaTec's subpoenas to Dr. Zamierowski and Mr. Piper (which included requests for production

---

[40] In addition to reasserting the notion that they need only produce documents that they deem relevant, through this statement, Plaintiffs also seek to twist the supplementation requirement in Rule 26(e) into a license to grant themselves an indefinite continuance of the otherwise applicable deadline(s) for responding to document requests. The law does not support their view in this regard. <u>See</u> Discussion, <u>supra</u>, pp. 44-46. In fact, as another court has observed, the approach taken by Plaintiffs "has unnecessarily complicated judicial review by providing a constantly changing target. The court condemns this litigation tactic and will not tolerate it in future responses in this case." <u>Association of American Physicians</u>, 837 F. Supp. at 457.

of documents on October 15 and 19, 2009, respectively), Plaintiffs'
counsel gave notice that no documents would be produced. See
Background, supra, pp. 18-20. In responding to ConvaTec's instant
Motion to Compel, Plaintiffs pointed to the belated production, on
October 30, 2009, of "over 14,000 pages of relevant, non-privileged
materials from Dr. Zamierowski" (Docket Entry 64 at 3 (emphasis
added)) and asserted that "Plaintiffs have produced all relevant,
non-privileged documents from the files of [Mr. Piper]" (id. at 7
(emphasis added)).[41] As previously noted, such an approach creates
unnecessary confusion. See Discussion, supra, pp. 49-51.

    In their Sur-Reply, Plaintiffs appeared to drop the "relevant"
qualifier from their claims of compliance: "Plaintiffs have
already assured ConvaTec that all responsive, non-privileged
documents from these two individuals had been produced." (Docket
Entry 73 at 6.) As to Mr. Piper, Plaintiffs continue: "The only
documents withheld from production were a few privileged documents
withheld by Mr. Piper, not KCI." (Id.) The further statement as
to Dr. Zamierowski admits a bit more ambiguity: "As for Dr.
Zamierowski, he gave his documents to Plaintiffs' counsel to review
for production. He did not withhold any documents on the basis of
relevance objections." (Id. (emphasis added).) However,
Plaintiffs then conclude with the comprehensive claim that

---

[41] According to Plaintiffs, they produced some of Mr. Piper's documents
"initially on July 24, 2009" as part of their own document production, and "[t]he
production was supplemented . . . ." (Docket Entry 64 at 7.) Plaintiffs did not
specify the date of this "supplementation." (See id.) ConvaTec's Reply seems
to indicate that Plaintiffs produced these additional Piper documents on November
2, 2009. (See Docket Entry 65 at 7.)

-62-

"Plaintiffs have produced all documents responsive to the subpoenas served on Mr. Piper and Dr. Zamierowski." (Id.)

The Court approves of neither the form of Plaintiffs' responses to these subpoenas, nor their initial briefing as to the portions of ConvaTec's Motion to Compel addressing these matters. However, in light of Plaintiffs' ultimate declaration that all non-privileged documents responsive to the requests have been produced and in the absence of any argument from ConvaTec that documents it expected to receive remain missing (unlike with the Boehringer meeting documents, see Discussion, supra, pp. 57-59), the Court will treat these aspects of ConvaTec's Motion to Compel as moot.[42]

## III.  CONCLUSION

As to Requests 18, 19, 32, 33, 36, 38 and 39 from Defendants' First Set of Document Requests, Plaintiffs have not carried their burden of showing the existence of grounds to resist the requested discovery.  Moreover, due to Plaintiffs' pattern of apparently calculated ambiguity, the Court cannot tell what, if any, documents otherwise responsive to these requests Plaintiffs have withheld based on conclusory objections.  Accordingly, the Court will grant ConvaTec's instant Motion to Compel as to these requests.

In connection with Requests 1-4, 7, 10 and 17 of Defendants' First Set of Document Requests, ConvaTec has identified the

---

[42] If ConvaTec contends that compliance issues remain as to the Zamierowski and Piper subpoenas, ConvaTec should seek relief in the district courts from which those subpoenas issued, see Fed. R. Civ. P. 45(c)(2)(b), and, if it chooses, seek transfer of such matters to this Court, see generally Smithkline Beecham Corp. v. Synthon Pharm. Ltd., 210 F.R.D. 163, 169 n.7 (M.D.N.C. 2002).

-63-

inventors' research materials and related patient records as the two areas of non-production. As to the latter matter, the Court has no information as to whether Plaintiffs have carried through on their previously stated commitment to produce patient records once (as has now occurred) the parties agreed to a protective order on point. The Court therefore will defer any ruling on ConvaTec's motion as it relates to patient records pending a status report from the parties. In regards to the inventors' work papers, Plaintiffs have failed to address ConvaTec's arguments regarding the unsuitable manner of production. Because Plaintiffs' manner of production and other actions have created unnecessary confusion about whether they have produced all of the inventors' laboratory notebooks, the Court will order Plaintiffs to make the original versions of the items in question available for inspection.

As to Request 25 from Defendants' First Set of Document Requests, Plaintiffs rapid change of position as to whether they had produced only responsive, non-privileged documents they deemed relevant or all responsive, non-privileged documents, coupled with ConvaTec's reasonable description of documents it perceives as missing from Plaintiffs' production warrants further action by Plaintiffs. Finally, the Court deems the issues ConvaTec has raised regarding the document requests in the Zamierowski and Piper subpoenas moot as a result of Plaintiffs' belated production of responsive documents and Plaintiffs' unequivocal declaration that they have withheld responsive documents only based on privilege claims (and not based on alleged lack of relevance).

**IT IS THEREFORE ORDERED** that Plaintiffs' Request to File a Sur-Reply (Docket Entry 72) is **GRANTED.**

**IT IS FURTHER ORDERED** that ConvaTec's Motion to Compel (Docket Entry 56) is **GRANTED IN PART**, but is **DENIED AS MOOT** to the extent it seeks to compel production of documents requested in the Zamierowski and Piper subpoenas.[43]

**IT IS FURTHER ORDERED** that, within seven days of the date of this Memorandum Opinion and Order, Plaintiffs shall produce <u>all</u> documents responsive to Requests 18, 19, 32, 33, 36, 38 and 39 from Defendants' First Set of Document Requests with the sole exception of any documents as to which Plaintiffs have a good faith basis for claiming a privilege as reflected in a proper privilege log provided to ConvaTec during that seven-day period (if not earlier).

**IT IS FURTHER ORDERED** that the Court will defer any ruling on ConvaTec's request for production of patient records related to Requests 1-4, 7, 10 and 17 of Defendants' First Set of Document Requests and that, within seven days of the date of this Memorandum

_____

[43] Because the Court grants ConvaTec's Motion to Compel in substantial part and because Plaintiffs produced requested documents after ConvaTec moved to compel, the Court will consider ordering Plaintiffs to pay the reasonable expenses ConvaTec incurred in making this motion. <u>See</u> Fed. R. Civ. P. 37(a)(5). In addition, the Court finds that other grounds for sanctions against Plaintiffs and/or Plaintiffs' counsel may exist. Accordingly, the Court will enter a separate order at a later date setting out potential rule violations and providing Plaintiffs an opportunity to be heard about the propriety of any sanctions, as well as the payment of expenses. Pending entry of that order, ConvaTec should prepare and should serve upon Plaintiffs an itemized list of the reasonable expenses, including attorneys fees, ConvaTec incurred in litigating the instant motion, so that both parties will be prepared to address the proper measure of ConvaTec's reasonable expenses when the time comes.

Opinion and Order, the parties shall file with the Court a joint status report as to whether this matter has become moot.

**IT IS FURTHER ORDERED** that, in connection with Requests 1-4, 7, 10 and 17 of Defendants' First Set of Document Requests, Plaintiffs shall make available for inspection to ConvaTec's counsel the original versions of all of the documents in Exhibit 29 to ConvaTec's Memorandum in Support of its Motion to Compel (Docket Entry 57) and of any and all "laboratory notebooks" (or similar materials by whatever name known) in the manner and form that said documents were maintained by the inventors. Plaintiffs also shall make such further copies of such materials as ConvaTec's counsel reasonably may request in connection with the ordered inspection. Counsel for the parties shall work cooperatively to carry out the foregoing inspection, including as to any privilege issues that may exist, and any failure to fulfill that duty, including by causing undue delay, shall constitute grounds for sanctions.

**IT IS FURTHER ORDERED** that, as to Request 25 of Defendants' First Set of Document Requests, within seven days of the date of this Memorandum Opinion and Order, Plaintiffs shall provide ConvaTec with an affidavit describing the efforts made to locate documents responsive to said request and shall serve ConvaTec with a proper privilege log for any documents responsive to said request withheld based on privilege (unless they have already done so).

_/s/ L. Patrick Auld_
L. Patrick Auld
United States Magistrate Judge

May 12, 2010