```
IN THE UNITED STATES DISTRICT COURT
 FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

KINETIC CONCEPTS, INC., KCI      )
LICENSING, INC., KCI USA, INC.,  )
KCI MEDICAL RESOURCES, MEDICAL   )
HOLDINGS LIMITED, KCI            )
MANUFACTURING and WAKE FOREST    )
UNIVERSITY HEALTH SCIENCES,      )
                                 )
                    Plaintiffs,  )
                                 )
          v.                     )    1:08CV00918
                                 )
CONVATEC INC.,                   )
BOEHRINGER WOUND SYSTEMS, LLC,   )
and BOEHRINGER TECHNOLOGIES, LP, )
                                 )
                    Defendants.  )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' Motion for Protective Order Concerning Topic 1 of Plaintiffs' FRCP 30(b)(6) Notices of Deposition (Docket Entry 130).  For the reasons that follow, the Court will grant said motion.

## I.  BACKGROUND

This case concerns various patents incorporated into a wound care product called the Vacuum Assisted Closure System.  (Docket Entry 4 at ¶¶ 15, 17.)  Plaintiffs own and/or possess an exclusive license to said patents.  (Id. at ¶¶ 17-22.)  Boehringer Wound Systems, LLC, and Boehringer Technologies, LP (collectively "Boehringer") developed an allegedly infringing wound treatment that ConvaTec Inc. ("ConvaTec") is involved in marketing.  (Id. at ¶¶ 23, 24 and 26).  Based on those allegations, Plaintiffs have

brought a patent infringement cause of action against Boehringer and ConvaTec (collectively "Defendants"). (Id. at ¶¶ 25-29.)

Defendants filed an Answer pleading seven affirmative defenses, as well as compulsory counterclaims of non-infringement and invalidity. (Docket Entry 19 at 6-13.) As to invalidity, Defendants alleged that the patents-in-suit "fail[ed] to comply with the patent laws, including, but not limited to, 35 U.S.C. §§ 101-103, and/or 112." (Id. at 7, 11-12.) With the Court's leave, Defendants later added an affirmative defense and related counterclaim(s) alleging that Plaintiffs engaged in inequitable conduct to procure their patents. (Docket Entries 112, 128.)

On September 1, 2009, this Court, per United States Magistrate Judge Wallace W. Dixon, entered a Joint Stipulated Scheduling Order that provided: "Close of Fact Discovery: December 3, 2009" and "Expert discovery shall be completed on or before April 29, 2010." (Docket Entry 37 at 1-2.) The undersigned Magistrate Judge thereafter granted Plaintiffs' request to extend the deadlines for fact and expert discovery. (Docket Entry 107.)

Plaintiffs then noticed multi-topic depositions under Rule 30(b)(6) of the Federal Rules of Civil Procedure ("the Rules") as to Defendants, who moved for a protective order barring such depositions in light of Defendants' then-pending objections to and motion to reconsider the order allowing further fact discovery. (Docket Entry 115.) The undersigned Magistrate Judge denied that motion for protective order and Defendants filed objections.

(Docket Entries 118, 119.)  At the request of the assigned United States District Judge, the parties deferred any further discovery pending judicial action on the motion to reconsider and/or the objections to the scheduling order modification.  (Docket Entry dated Apr. 16, 2009.)  The undersigned Magistrate Judge subsequently denied Defendants' reconsideration motion and the assigned District Judge overruled Defendants' objections to the scheduling order modification.  (Docket Entries 126, 134.)

At that point, Defendants agreed to make representatives available for 16 of the 17 topics set out in the Rule 30(b)(6) deposition notices, but sent a letter to Plaintiffs asking them to withdraw Topic 1, which sought testimony as to the "'basis for [Defendants'] asserted counterclaims and defenses.'" (Docket Entry 131 at 3 (citing Ex. 1 and quoting Exs. 2-4).)[1] When Plaintiffs did not respond to Defendants' letter, Defendants filed this motion seeking a protective order barring any deposition as to Topic 1.  (Id. at 3.)  The Court then sua sponte ordered Plaintiffs to "consult with Defendants in a good-faith effort to resolve this matter prior to filing any response."  (Docket Entry 132 at 2.) Said order further "strongly encouraged [the parties] to work cooperatively to resolve this and any other discovery-related disputes that may arise without further court action."  (Id.)

---

[1] Citations to this and other memoranda from Defendants refer to page numbers in the CM/ECF footer, not the memoranda's internal pagination (which uses a convention that does not assign Arabic numerals to certain initial pages).

Plaintiffs' lone action in response to the Court's foregoing directive consisted of their counsel sending this e-mail:

> In accordance with Magistrate Judge Auld's April 27, 2010 Order regarding Defendants' Motion for Protective Order Concerning Topic 1 of Plaintiffs' FRCP 30(b)(6) Notices of Deposition, <u>Plaintiffs will withdraw Topic 1 if Defendants will affirmatively state that, at this point in time, they have no further evidence that they intend to use on summary judgment or at trial other than what appears in their previously served responses to Plaintiffs' contention interrogatories</u>.

(Docket Entry 135 at Ex. B (emphasis added).) Through their counsel, Defendants answered as follows:

> As stated in Defendants' motion, beyond the contention interrogatory responses, the parties have already exchanged extensive expert reports, and Defendants have set out various facts concerning Plaintiffs' inequitable conduct in the Amended Answer recently allowed by the Court. In addition, all parties have reserved the right to supplement reports and contentions as discovery proceeds, and in response to reports and testimony offered by the other side.
>
> Consequently, <u>Plaintiffs' request is unreasonable and unacceptable, and confirms the need for Defendants' motion</u>.

(Docket Entry 135 at Ex. C (emphasis added).) Plaintiffs then responded in opposition to Defendants' instant motion and Defendants filed a reply. (Docket Entries 135, 139.)

## II. DISCUSSION

In discussing the instant motion, the Court first sets out the standard for motions seeking such protective orders and then addresses the parties' arguments about the cited deposition topic.

-4-

A.  Standard for Protective Order Barring Deposition

In assessing a motion seeking a protective order barring a deposition, the Court must consider the scope of discovery, the rules for depositions, the obligations of counsel during discovery, and the procedure governing motions for protective orders.

1.  The Scope of Discovery

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants."  Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment.  Accordingly, under the Federal Rules of Civil Procedure (the "Rules"), "[u]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is <u>relevant to any party's claim or defense</u> . . . ."  Fed. R. Civ. P. 26(b)(1) (emphasis added).[2]  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  <u>Id.</u>  <u>See also</u> <u>Elkins v. Broome</u>, No. 1:02CV305, 2004 WL 3249257, at *2 (M.D.N.C. Jan. 12, 2004) (unpublished) ("[R]elevancy at discovery is a far different matter from relevancy at trial.  At discovery, relevancy is more

---

[2] Prior to December 1, 2000, said provision permitted "discovery regarding any matter, not privileged, which is <u>relevant to the subject matter in the pending action</u>," Fed. R. Civ. P. 26(b)(1) (1993) (emphasis added).  The Rules Committee altered this language in response to concerns that, "in some instances, particularly cases involving large quantities of discovery, parties [were] seek[ing] to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the 'subject matter' involved in the action."  Fed. R. Civ. P. 26 advisory committee's notes, 2000 Amendment, Subdivision (b)(1).  In order to secure discovery as to the "subject matter" of an action, a party now must obtain court authorization by showing "good cause."  Fed. R. Civ. P. 26(b)(1).

properly considered synonymous with 'germane' as opposed to competency or admissibility."); Flora v. Hamilton, 81 F.R.D. 576, 578 (M.D.N.C. 1978) ("It is clear that what is relevant in discovery is different from what is relevant at trial, in that the concept at the discovery stage is much broader.").

However, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." Fed. R. Civ. P. 26(b)(1). That cross-referenced provision sets out the following limitations:

> (i) the discovery sought is <u>unreasonably cumulative or duplicative</u>, or <u>can be obtained from some other source that is more convenient, less burdensome, or less expensive</u>;
>
> (ii) <u>the party seeking discovery has had ample opportunity to obtain the information by discovery in the action</u>; or
>
> (iii) the <u>burden or expense of the proposed discovery outweighs its likely benefit</u>, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). Notwithstanding the foregoing limitations, the United States Court of Appeals for the Fourth Circuit has declared that "[d]iscovery under the Federal Rules of Civil Procedure is <u>broad in scope and freely permitted</u>." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (emphasis added).[3]

---

[3] In so ruling, the Fourth Circuit did not expressly address the 2000 Amendment to Rule 26(b)(1) that narrowed, to some extent, the scope of discovery, see Discussion, supra, n.2; however, the case before said court was filed after that amendment took effect, see Carefirst, 334 F.3d at 395. Accordingly, Carefirst's declaration that the Rules permit discovery "broad in scope" calls

-6-

### 2. The Rules for Depositions

The Rules provide a number of discovery devices, including oral depositions, see Fed. R. Civ. P. 30. Under the Rule governing such depositions, "a party may name as the deponent a public or private corporation . . . or other entity and must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). "The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify." Id. "The persons designated must testify about information known or reasonably available to the organization." Id.

### 3. The Obligations of Counsel during Discovery

By Local Rule, this Court has directed "counsel to conduct discovery in good faith and to cooperate and be courteous with each other in all phases of the discovery process." M.D.N.C. R. 26.1(b)(1) (emphasis added). Moreover, "Rule 26(g) imposes an affirmative obligation to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37." Fed. R. Civ. P. 26 advisory committee's

---

into question authority suggesting that the 2000 Amendment significantly narrowed the scope of discovery, see, e.g., Quality Aero Tech., Inc. v. Telemetrie Elektronik, Gmbh, 212 F.R.D. 313, 315 n.2 (E.D.N.C. 2002), and bolsters the view "that the 2000 'amendments do not effect a dramatic change in the scope of discovery,'" Elkins, 2004 WL 3249257, at *2 (internal brackets omitted) (quoting 8 Charles A. Wright et al., Federal Practice and Procedure § 2008 (Supp. 2003)); see also United Oil Co., Inc. v. Parts Assocs., Inc., 227 F.R.D. 404, 409 (D. Md. 2005) ("'The present standard - "relevant to the claim or defense of any party" - is still a very broad one.'" (quoting 8 Charles A. Wright et al., Federal Practice and Procedure § 2008 (Supp. 2004))).

notes, 1983 Amendment, Subdivision (g) (emphasis added). "[T]he spirit of the [R]ules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues . . . ." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. See also Mills v. East Gulf Preparation Co., 259 F.R.D. 118, 130 (S.D.W. Va. 2009) ("The civil discovery process is to be engaged in cooperatively.").

Specifically, Rule 26(g) mandates that:

> [E]very discovery request, response, or objection must be signed by at least one attorney of record . . . or by the party personally, if unrepresented . . . . By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a <u>reasonable inquiry</u> . . . a discovery request, response, or objection [is] . . . (i) <u>consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law</u>; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) <u>neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case</u>, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B) (emphasis added). The certification requirement in Rule 26(g) "obliges each attorney <u>to stop and think</u> about the legitimacy of a discovery request, a response thereto, or an objection." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g) (emphasis added).[4]

---

[4] "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." Fed. R. Civ. P. 26(g)(3). See also Fed. R. Civ. P.

-8-

### 4. The Procedure for Motions for Protective Orders

Despite the unambiguous dictates of the Rules (including Rule 26(g)) and related local rules (like this Court's Local Rule 26.1(b)(1)) that require attorneys to conduct discovery in a cooperative fashion, courts continue to find that "[h]ardball discovery . . . is still a problem in some cases," Network Computing Servs. Corp. v. Cisco Sys., Inc., 223 F.R.D. 392, 395 (D.S.C. 2004) (noting that such conduct "is costly to our system and consumes an inordinate amount of judicial resources"). As a result, although the Rules provide that the "primary responsibility for conducting discovery . . . rest[s] with the litigants, [who are] obliged to act responsibly and avoid abuse," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (g), the Rules also "acknowledge[] the reality that [discovery] cannot always operate on a self-regulating basis," Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment, Subdivision (b).

The Rules thus afford a number of mechanisms for litigants to seek judicial intervention in discovery disputes; for example, "[t]he court may, for good cause, issue an order, to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including . . . forbidding . . . discovery; prescribing a discovery method other than the one selected by the

---

26 advisory committee's notes, 1983 Amendment, Subdivision (g) ("Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions."); M.D.N.C. R. 83.4 ("If an attorney or a party fails to comply with a local rule of this court, the court may impose sanctions against the attorney or party, or both.").

-9-

party seeking discovery; . . . forbidding inquiry into certain matters, or limiting the scope of . . . discovery to certain matters . . . ." Fed. R. Civ. P. 26(c)(1).[5] "To obtain a protective order under Rule 26(c), the party resisting discovery must establish that the information sought is covered by the rule and that it will be harmed by disclosure." In re Wilson, 149 F.3d 249, 252 (4th Cir. 1998).[6] If the party resisting discovery makes the foregoing showing, "the party seeking the materials then must establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure." Id.

In addition, "[o]n its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit [discovery] . . . if it concludes that [a limitation in Rule 26(b)(2)(C) applies]." Nicholas v. Wyndham Int'l Inc., 373 F.3d 537, 543 (4th Cir. 2004). As set out in full above, those

---

[5] "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). The "loser-pays," fee-shifting provisions of Rule 37(a)(5) apply to motions for protective orders. See Fed. R. Civ. P. 26(c)(3).

[6] This allocation of the burden of persuasion coheres with rulings by district judges and magistrate judges in the Fourth Circuit (including members of this Court) confronted with discovery disputes in other procedural postures. See, e.g., United Oil Co., Inc. v. Parts Assocs., Inc., 227 F.R.D. 404, 411 (D. Md. 2005) ("Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules."); Elkins, 2004 WL 3249257, at *2 (Dixon, M.J.) ("It is the rule in federal court that the burden is on the party resisting discovery on relevancy grounds to support his objection; it is not the party's burden propounding discovery, at least in the first instance, to show relevancy."); Spell v. McDaniel, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984) ("[T]he burden of showing that the requested discovery is not relevant to the issues in this litigation is clearly on the party resisting discovery."); Flora, 81 F.R.D. at 578 (Gordon, C.J.) ("[T]he burden of showing that the requested discovery is not relevant to the issues in the case is on the party resisting discovery.").

-10-

limitations encompass situations where "(i) the discovery sought is unreasonably cumulative or duplicative . . .; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Fed. R. Civ. P. 26(b)(2)(C).

B. Analysis of Defendants' Motion to Bar 30(b)(6) Deposition

Defendants assert that the Court should enter a protective order barring depositions under Rule 30(b)(6) as to Topic 1 (which seeks testimony regarding the basis for all of Defendants' defenses and counterclaims), "because this case involves highly complex and technical issues." (Docket Entry 131 at 6.) In particular, Defendants note that their counterclaims and defenses, such as non-infringement, invalidity, and unenforceability, involve "[l]egal issues . . . too complex and difficult for one deponent to fully articulate." (Id. at 7.) In support of this position, Defendants have identified persuasive authority for the proposition that patent cases do not lend themselves to such "contention" discovery via the deposition of an organizational representative. (See id. at 7-8 (citing Exxon Research & Eng'g Co. v. United States, 44 Fed. Cl. 597, 602 (1999), and McCormick-Morgan, Inc. v. Teledyne Indus., Inc., 134 F.R.D. 275, 286-87 (N.D. Cal.), rev'd in part on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991)).)

In addition, Defendants point to significant case law, including decisions by a Magistrate Judge of this Court, holding

that discovery as to a party's "contentions" is "more appropriately and reliably obtained by way of contention interrogatories than through depositions." (Id. at 8-9 (citing BB&T Corp. v. United States, 233 F.R.D. 447, 448 (M.D.N.C. 2006), Wilson v. Lakner, 228 F.R.D. 524, 529 n.8 (D. Md. 2005), Exxon Research, 44 Fed. Cl. at 598, and United States v. Taylor, 166 F.R.D. 356, 363 n.7 (M.D.N.C. 1996)).) According to Defendants, they "have already provided Plaintiffs with responses to contention interrogatories . . . [and] also have provided expert reports on invalidity, non-infringement, and inequitable conduct. These expert reports, totaling 104 pages, all discuss the bases for Defendants' contentions and provide detailed analysis for each." (Id. at 9 (citing BB&T Corp., 233 F.R.D. at 450, to support notion that "expert reports may render moot any further contention discovery").) As a result, Defendants contend that "Plaintiffs do not need the deposition of Defendants on Topic 1 [of the Rule 30(b)(6) notices] because Defendants have adequately and timely provided the same information through contention interrogatories and expert reports." (Id. at 10.)

In responding to Defendants' instant motion, Plaintiffs do not contest the argument that, in general, discovery devices such as interrogatories constitute preferred vehicles for "contention" inquiries of the sort at issue here. (See Docket Entry 135 at 2-3.) Rather than challenging that general rule, Plaintiffs assert that "Defendants' elusive responses to Plaintiffs' contention interrogatories is [sic] exactly the circumstances courts such as

-12-

[those cited by Defendants] contemplated [as exceptions to the general rule]."  (Id. (emphasis added) (citing McCormick-Morgan, 134 F.R.D. at 286-87, and Exxon Research, 44 Fed. Cl. at 601-02).) Although in this subsection of their argument, Plaintiffs twice accuse Defendants of giving "elusive responses" to contention interrogatories, Plaintiffs do not point to examples of any such conduct in this part of their brief.  (See id.)  Instead, Plaintiffs state:  "As discussed below, Defendants' lack of assurance that the contention interrogatories were thoroughly responded to proves that the interrogatory process did not yield the discovery necessary . . . ."  (Id. (emphasis added).)  For reasons set forth hereafter, the Court finds nothing in the later subsections of Plaintiffs' brief to substantiate their allegations (in the first subsection of their brief) that Defendants gave "elusive responses" to interrogatories or that Defendants failed to "thoroughly respond[]" to interrogatories.

Plaintiffs entitle the second subsection of their argument "Topic 1 is not limited to complex and technical legal issues." (Id. at 3 (emphasis added).)  As the framing of this portion of their brief suggests, Plaintiffs do not dispute (or, more accurately, Plaintiffs implicitly concede) that aspects of their proposed Topic 1 for the Rule 30(b)(6) depositions do involve "complex and technical legal issues."  (See id. at 3-5.)  Rather than addressing the propriety of conducting Rule 30(b)(6) depositions regarding such "complex and technical issues," however,

-13-

Plaintiffs seek to justify their instant discovery request by pointing to the fact that Topic 1 encompasses some "<u>fact intensive</u> counterclaims and defenses such as laches, equitable estoppel, and unenforceability pursuant to the doctrine of inequitable conduct." (Id. at 3 (emphasis added).)

According to Plaintiffs, "[a]dditional factual information is necessary for Plaintiffs to fully explore Defendants' contentions [as to these fact-based counterclaims and defenses]." (Id.) Plaintiffs then offer the following illustration:

> For example, <u>in response to Plaintiffs' interrogatory regarding Defendants' basis for its [sic] contentions that Plaintiffs are barred by laches or estoppel, ConvaTec responded, "ConvaTec believes that Plaintiffs knew of Boehringer's commercial launch of the Engenex System in or about February 2007."</u> This conclusory response, which Defendants did not support with any factual or documentary evidence, yields a slew of factual questions that should be answered by the Defendants' representatives. Defendants' laches and estoppel contentions are not complex or technical contentions. They are based on facts or circumstances that led ConvaTec to believe that Plaintiffs knew about Boehringer's commercial launch of their Engenex System. Plaintiffs have a right to use acceptable discovery vehicles to explore the facts and circumstances that led to Defendants' beliefs.

(Id. at 3-4 (emphasis added) (internal footnote omitted) (quoting ConvaTec Inc.'s Objections and Responses to Plaintiffs' First Set of Interrogatories, p. 25.)

If, as Plaintiffs' brief asserts, "in response to Plaintiffs' interrogatory regarding Defendants' basis for its [sic] contentions that Plaintiffs are barred by laches or estoppel, ConvaTec responded 'ConvaTec believes that Plaintiffs knew of Boehringer's

-14-

commercial launch of the Engenex System in or about February 2007'" (id.), the Court might agree that Plaintiffs should have a chance to employ additional devices (including perhaps a Rule 30(b)(6) deposition) to seek out more factual information because such a response might well qualify as "elusive." As Defendants' Reply points out, however, Plaintiffs' purported example of Defendants' failure to respond fulsomely "relies on a misleadingly cropped quotation of ConvaTec's response to Interrogatory No. 8." (Docket Entry 139 at 4.) The complete response states:

> ConvaTec believes that Plaintiffs knew of Boehringer's commercial launch of the Engenex® System in or about February 2007. Further, <u>ConvaTec understands that Boehringer personnel met with Plaintiffs to discuss the Engenex® system, including its manner of operation and the structural nature of its components, in or about June 2007</u>.
>
> <u>Plaintiffs' commercial acquiescence to Boehringer's continued commercial sales and other activity constitutes sufficient laches and estoppel to preclude this lawsuit, commenced in December 2008</u>.
>
> <u>ConvaTec incorporates by reference Boehringer's Response to Plaintiffs' Interrogatory No. 8</u>.

(Docket Entry 135 at Ex. A, p. 26 (emphasis added).)[7]

Examination of this full response reveals that, in setting out their primary example of how Defendants failed to give substantive answers to Plaintiffs' contention interrogatories regarding fact-intensive defenses pleaded in Defendants' Answer, Plaintiffs created a false impression that ConvaTec's interrogatory response

---

[7] Because this exhibit consists of multiple items with their own internal pagination, references to page numbers refer to the CM/ECF footer's pagination.

consisted only of a single conclusory assertion of belief bereft of any factual predicate. In actuality, as the quotation of the full response reflects, Plaintiffs' argument in this regard omits three additional elements of ConvaTec's interrogatory response:

1) that "Boehringer personnel met with Plaintiffs to discuss the Engenex® system . . . in or about June 2007" (id.);

2) that "Plaintiffs' commercial acquiescence to Boehringer's continued commercial sales" prior to the filing of the instant lawsuit in December 2008 (but after the June 2007 meeting) provides the basis for the laches and estoppel defense (id.); and

3) that ConvaTec "incorporate[d] by reference Boehringer's Response" to Plaintiffs regarding this same interrogatory (id.).

Moreover, that incorporated response provided further, more detailed factual information on point as follows:

> Boehringer states that Plaintiffs knew of Boehringer's development and sale of the Engenex® System, including its manner of operation and the structural nature of its components, at least as early as June 2007. Despite this knowledge, Plaintiffs unreasonably delayed bringing this lawsuit.
>
> Moreover, in June 2007 representatives of KCI met with representatives of Boehringer and discussed, in part, potential collaborations and/or business arrangements, including licensing, relating to the parties' respective wound care products. The respective intellectual property of the parties was mentioned and it was noted that the two companies' relevant intellectual property was complementary, such that together, the companies would have a strong IP portfolio. Furthermore, the Engenex® System was specifically discussed. KCI indicated that it was interested in the Engenex® product and expressed interest in further discussions regarding Boehringer's products, and stated that KCI would provide Boehringer with a business proposal. Despite the length

-16-

> of the meeting and the ample time for discussing all topics, at no point during the meeting did KCI mention or even allude to the idea that Boehringer's products may be infringing any patents owned by KCI, including the patents-in-suit. Indeed, KCI did not accuse Boehringer of infringing until this lawsuit was filed on December 18, 2008, at least eighteen months after learning of the Engenex® product and specifically considering it in view of the intellectual property of the parties.
>
> This conduct led Boehringer to reasonably believe that Plaintiffs would not assert that the Engenex® System infringes the patents now in suit, patents which issued prior to 2007. Moreover, Defendants reasonably relied on Plaintiffs' conduct (both in the form of affirmative statements made in June 2007 and KCI's silence thereafter), such that Boehringer will be materially prejudiced if this suit is allowed to proceed. Such prejudice includes, but is not necessarily limited to, potential economic prejudice.

(Docket Entry 135 at Ex. A, pp. 39-40.)

The Court agrees with Defendants that "Boehringer's lengthy response provides more than enough detail to allow Plaintiffs to assess the basis for Defendants' laches and estoppel defenses." (Docket Entry 139 at 4.) In addition, Defendants note that Plaintiffs did not need a Rule 30(b)(6) deposition on this subject because they were deposing "one of the Boehringer employees who participated in the referenced meetings" and thus could explore with said witness any further questions they had about that factual predicate for the laches and estoppel defense. (Id.) Under these circumstances, the Court concludes that:

1) allowing Plaintiffs to conduct Rule 30(b)(6) depositions as to Topic 1 to explore Defendants' laches and estoppel defense would contravene the limitations in Rule 26(b)(2)(C) in that "(i) the

-17-

discovery sought is unreasonably cumulative or duplicative . . .; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; [and] (iii) the burden or expense of the proposed discovery outweighs its likely benefit"; and

2) good cause exists to preclude such discovery under Rule 26(c)(1), i.e., to protect Defendants from undue burden or expense.

The only other concrete example Plaintiffs offer in support of their otherwise conclusory assertion that they need to conduct a Rule 30(b)(6) deposition as to the basis for the contentions underlying Defendants' defenses and counterclaims is as follows:

> Defendants have also included as their Seventh Affirmative Defense, "all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the Patent Laws of the United States, and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation." *See Defendants' Amended Answer, Affirmative Defenses and Counterclaims to Plaintiffs' First Amended Complaint* at p. 7 (Docket No. 133) ("Amended Answer"). As this affirmative defense is extremely overbroad, and does not contain only complex and technical legal issues, Plaintiffs may appropriately be allowed to gather factual information, through a 30(b)(6) deposition, on any potential affirmative defenses that would fall under this catch all.

(Docket Entry 135 at 4 (italics in original).)

The cited catch-all reservation of lawful affirmative defenses appeared in Defendants' Answer filed February 2, 2009. (Docket Entry 19 at 7.) Plaintiffs offer no explanation for their failure to explore this issue earlier, such as when they served other contention interrogatories. See Fed. R. Civ. P. 26(b)(2)(C)(ii)

-18-

(prohibiting discovery if "party seeking discovery has had ample opportunity to obtain the information by discovery in the action"). Nor have Plaintiffs explained why they should proceed by deposition, rather than interrogatory, as to this particular "contention" discovery. See BB&T Corp., 233 F.R.D. at 449 ("[U]ntil a party has first shown that the interrogatory process cannot be used, it may not seek to use depositions for contention discovery."); Fed. R. Civ. P. 26(b)(2)(C)(i) (precluding discovery if "more convenient, less burdensome, or less expensive" option exists). Finally, Plaintiffs have not articulated why a purported need for information about Defendants' Seventh Affirmative Defense warrants a Rule 30(b)(6) deposition on all Defendants' defenses and counterclaims. See Fed. R. Civ. P. 26(b)(2)(C)(iii) (barring discovery where "burden or expense of the proposed discovery outweighs its likely benefit"). Plaintiffs' alleged desire for further information about Defendants' Seventh Affirmative Defense thus provides no basis for a Rule 30(b)(6) deposition on Topic 1.

In sum, Defendants have shown that the requested discovery implicates Rule 26(c)(1) and subjects them to harm, whereas the grounds cited by Plaintiffs as warranting such discovery lack merit; the limitations in Rule 26(b)(2)(C) and the provisions of Rule 26(c)(1) thus support issuance of a protective order.[8]

---

[8] The deficiencies in Plaintiffs' showing as to their need for further contention discovery also cause the Court to reject Plaintiffs' request that the Court condition the protective order on Defendants' supplementation of their responses to Plaintiffs' contention interrogatories (see Docket Entry 135 at 6).

## III. CONCLUSION

The Rule 30(b)(6) depositions Plaintiffs seek to conduct as to Topic 1 of their deposition notices exceed the limitations set out in Rule 26(b)(2)(C) and good cause exists under Rule 26(c)(1) to forbid such discovery.[9]

**IT IS THEREFORE ORDERED** that Defendants' Motion for Protective Order Concerning Topic 1 of Plaintiffs' FRCP 30(b)(6) Notices of Deposition (Docket Entry 130) is **GRANTED**.

                                                  /s/ L. Patrick Auld
                                                    **L. Patrick Auld**
                                     **United States Magistrate Judge**

May 17, 2010

---

[9] Because the Court grants Defendants' instant motion for protective order, the Court will consider ordering Plaintiffs to pay the reasonable expenses Defendants incurred in pursuing this matter. See Fed. R. Civ. P. 26(c)(3) (adopting Fed. R. Civ. P. 37(a)(5)). In addition, the Court finds that other grounds for sanctions against Plaintiffs and/or Plaintiffs' counsel may exist. Accordingly, the Court will enter a separate order at a later date setting out potential rule violations and providing Plaintiffs an opportunity to be heard about the propriety of any sanctions, as well as the payment of expenses. Pending entry of that order, Defendants should prepare and should serve upon Plaintiffs an itemized list of the reasonable expenses, including attorneys fees, Defendants incurred in bringing this motion, so that the parties will be prepared to address the proper measure of those reasonable expenses when the time comes.